# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2011-NMSC-022**

**Filing Date: May 13, 2011**

**Docket No. 32,149**

**STATE OF NEW MEXICO,**

       **Plaintiff-Petitioner,**

**v.**

**TIMOTHY SANDOVAL,**

       **Defendant-Respondent.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**John W. Pope, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Petitioner

David Henderson, Attorney at Law, P.C.
C. David Henderson
Santa Fe, NM

for Respondent

## OPINION

**MAES, Justice.**

{1}     Timothy Sandoval (Defendant) was convicted of the second-degree murder of Jeff McCormick (McCormick) contrary to NMSA 1978, Section 30-2-1(B) (1994). The central issue at trial was whether, at the time McCormick was shot, he was a mere bystander or an actual participant with the two other men involved in the altercation.  The Court of Appeals determined that the self-defense and defense of another jury instructions issued at Defendant's trial constituted fundamental error because the instructions failed "to adequately and accurately describe Defendant's theory of defense" based on a confrontation with

1

multiple assailants, impermissibly lessened the State's burden of proof, and misstated the applicable law. *State v. Sandoval*, 2010-NMCA-025, ¶¶ 28, 29, 32, 147 N.M. 465, 225 P.3d 795. The Court held that reversal of Defendant's conviction was necessary to prevent a miscarriage of justice. *Id.* ¶ 33. We hold that the instructions were not a correct statement of the law, but because the jury could have found that Defendant acted in self-defense and defense of another without considering McCormick as an assailant, issuing the instructions did not constitute fundamental error. We reverse and remand this case to the Court of Appeals to consider the issues not previously addressed.

## I.    FACTS AND PROCEDURAL HISTORY

{2}    This appeal requires us to determine whether Defendant was entitled to the self-defense and defense of another instructions, and therefore we "review the evidence in the light most favorable to the giving of the self-defense [or defense of another] instruction." *State v. Ellis*, 2008-NMSC-032, ¶ 2, 144 N.M. 253, 186 P.3d 245.

{3}    Ross "Chino" Ramos (Ramos) and his brother James Arbizu (Arbizu) had been drinking beer and repairing Ramos' Explorer when McCormick, the father of Ramos' and Arbizu's younger brother, called to ask for a ride home from work. After picking up McCormick in the Explorer, the three men stopped at a gas station to buy cigarettes. Defendant and Vanessa Couch (Girlfriend) were at the same gas station, filling Girlfriend's car. After Defendant paid for the gas and exited the store, a verbal altercation occurred between Defendant and certain occupants of the Explorer.

{4}    Girlfriend testified that the passengers of the Explorer called Defendant to their vehicle and started yelling "East Side." At some point during the altercation, Arbizu got out of the Explorer and started walking toward Defendant. According to Girlfriend, Defendant told Arbizu that he did not know who he was and did not "want any problems." Arbizu testified that it was Defendant who approached the Explorer at the gas station and asked whether the two had gone to school together.

{5}    Defendant returned to Girlfriend's car, and she sped away. The three men in the Explorer followed Defendant and Girlfriend. Ramos was driving, Arbizu was sitting in the front passenger seat, and McCormick was sitting in the back, passenger-side seat. Ramos forced Girlfriend's car off the road and stopped in front of her car. Holding a gun, Arbizu exited the Explorer first, followed by Ramos. Defendant exited Girlfriend's car, also with a gun in hand. Ramos put his hands in the air, telling Defendant to lower his gun. As Defendant put his gun down, Ramos reached to his side, as if he had a gun. A rapid succession of shots followed.

{6}    Defendant fired his semiautomatic weapon at least eight times. Arbizu raised his gun, which had been cocked and loaded with eight rounds of ammunition, but one of Defendant's bullets struck and disabled the gun. Arbizu suffered gunshot wounds to the

2

shoulder, chest, neck, and both hands. Ramos was shot twice in the head and died at the scene.

**{7}** At some point during the altercation, the back door of the Explorer opened and McCormick's legs became visible. Defendant fired two shots into the back of the Explorer. One shot traveled through the Explorer without hitting McCormick. The first bullet's trajectory indicated that Defendant was standing between two and four feet from the Explorer when he fired the gun. Defendant fired the second shot while holding the muzzle of his gun less than six inches from McCormick's lips. The autopsy later revealed that McCormick was shot once; the bullet entered the side of his mouth and exited through the back of his head. Blood stains on the seat and floorboard indicated that McCormick was nearly prostrate when he was shot, with his head six to twelve inches above the seat cushion. Lieutenant Jeff Noah, of the Valencia County Sheriff's Department, was dispatched to the scene and discovered McCormick laying lifeless in the back seat of the Explorer with his feet dangling out the passenger side door, clutching a package of cigarettes.

**{8}** Other than Girlfriend and Arbizu, Perry Sanchez (Sanchez), who testified for the State, was the only other eyewitness. Sanchez was in his barn when he saw two vehicles stop along the road. Sanchez stated that he saw Defendant exit Girlfriend's car and two individuals exit the Explorer, Arbizo and Ramos. Sanchez saw Defendant point a gun at Ramos who told Defendant to "[p]ut your gun down, homes . . . ." Sanchez turned away as Defendant and Arbizu were lowering their guns. He heard gunfire, and looking back, Sanchez saw Defendant shoot into the back window of the Explorer and then leave in Girlfriend's car.

**{9}** Defendant turned himself in to law enforcement within twenty-four hours of the incident and was charged with, inter alia, two open counts of murder, one as to Ramos and the other as to McCormick, and one attempted open count of murder as to Arbizu. Prior to trial, the State dismissed the attempted murder charge.

**{10}** Although Defendant did not testify, Defendant called Girlfriend to the stand to establish a claim of self-defense and defense of another. Girlfriend testified that during the shooting she was scared for her life as well as Defendant's life. The trial court issued two self-defense instructions, one as to the killing of Ramos and one as to the killing of McCormick. Both self-defense instructions read as follows:

> Evidence has been presented that [Defendant] killed [Ramos or McCormick] in self defense.
>
> 1.  The killing is in self defense if:
> 2.  There was an appearance of immediate danger of death or great bodily harm to [Defendant] *as a result of his confrontation with Ross Ramos and James Arbizu*; and

3

3. [Defendant] was in fact put in fear by the apparent danger of immediate death or great bodily harm and killed [Ramos or McCormick] because of that fear; and

4. A reasonable person in the same circumstances as [Defendant] would have acted as [Defendant] did.

The burden is on the state to prove beyond a reasonable doubt that [Defendant] did not act in self defense. If you have a reasonable doubt as to whether [Defendant] acted in self defense you must find [Defendant] not guilty.

(Emphasis added.) Similarly, the trial court issued two defense of another jury instructions. In the defense of another instructions, the jury was to consider whether "[t]here was an appearance of immediate danger of death or great bodily harm to [Girlfriend] as a result of the confrontation between [Defendant] and Ross Ramos and James Arbizu."

**{11}** The jury acquitted Defendant for the killing of Ramos but found him guilty of second-degree murder as to McCormick. Defendant was also found guilty of using a firearm to commit the crime. The trial court denied Defendant's motion for a new trial. Defendant was sentenced to sixteen years in prison, a fifteen-year basic term with a one-year firearm enhancement, with ten years of the sentence suspended.

**{12}** Defendant appealed, and the Court of Appeals reversed Defendant's convictions and remanded for a new trial. *Sandoval*, 2010-NMCA-025, ¶ 34. The Court held that the jury instructions failed "to adequately and accurately describe Defendant's theory of defense" based on multiple assailants, thus violating Defendant's fundamental rights. *Id.* ¶ 28. We granted the State's petition for writ of certiorari to decide "[w]hether it is fundamental error against [Defendant] to instruct a jury that it may find that [Defendant] killed justifiably without stating or requiring the jury to find that the victim was an aggressor." *State v. Sandoval*, 2010-NMCERT-003, 148 N.M. 560, 240 P.3d 15; *see* NMSA 1978, § 34-5-14(B)(1) (1972).

## II. STANDARD OF REVIEW

**{13}** "The standard of review we apply to jury instructions depends on whether the issue has been preserved." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. If the issue has been preserved, this Court reviews the instruction for reversible error. *Id.* If the issue has not been preserved, this Court reviews for fundamental error. *Id.* Under both standards of review, we determine "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citation omitted). Under fundamental error review, however, the jury verdict will not be reversed unless necessary to prevent a "miscarriage of justice." *State v. Silva*, 2008-NMSC-051, ¶ 13, 144 N.M. 815, 192 P.3d 1192 (internal quotation marks and citation omitted); *see also State v. Barber*, 2004-NMSC-019, ¶¶ 15-18, 135 N.M. 621, 92 P.3d 633 (discussing the history of

4

fundamental error review and the circumstances under which fundamental error has been found).

**{14}** It is unclear from the record and the trial transcripts which party tendered the jury instructions to the trial court, but it is undisputed that neither Defendant nor the State objected to the tendered instructions. "Ordinarily a defendant may not base a claim of error on instructions he or she requested or to which he or she made no objection." *State v. Varela*, 1999-NMSC-045, ¶ 11, 128 N.M. 454, 993 P.2d 1280; *see also State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348 ("Where counsel fails to object, the appellate court is limited to a fundamental error review.").

**{15}** Accordingly, because the jury instruction claim was not preserved at the trial level, we review for fundamental error. We first determine whether the self-defense and defense of another jury instructions should have been presented to the jury. If the issuing of the instructions was proper, we then determine whether the instructions were erroneous, that is, whether a reasonable juror would have been "misdirected" or "confused" by the instructions. Only if the answer to this second inquiry is in the affirmative do we decide whether reversal is necessary to prevent a miscarriage of justice.

**{16}** "[C]ase law and commentary treat 'defense of another' and 'self-defense' as virtually identical for purposes of analysis." *State v. Gallegos*, 2001-NMCA-021, ¶ 7, 130 N.M. 221, 22 P.3d 689; *see also* UJI 14-5172 NMRA Committee Commentary (cross-referencing UJI 14-5171 NMRA, self-defense instruction's Committee Commentary). Therefore, assertions made regarding self-defense instructions are also assumed to apply to defense of another instructions.

## III.   DISCUSSION

### A.   Whether the Issuing of the Self-Defense and Defense of Another Jury Instructions was Proper

**{17}** The State argues that Defendant was not entitled to the self-defense and defense of another jury instructions as to McCormick because there was not enough evidence to show that McCormick acted in concert with Arbizu and Ramos. For a court to issue a self-defense instruction, "there need be only enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense. If any reasonable minds could differ, the instruction should be given." *State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170 (internal citation omitted). The elements of self-defense that must be shown by sufficient evidence to warrant the self-defense instruction are that "(1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed." *Rudolfo*, 2008-NMSC-036, ¶ 17 (internal quotation marks and citation omitted); *see* UJI 14-5171. A defense of another jury instruction is properly issued when

5

(1) there was an appearance of death or great bodily harm to a person; (2) the defendant believed the person was in immediate danger of death or great bodily harm from the victim and killed the victim to prevent the death or great bodily harm; and (3) the apparent danger "would have caused a reasonable person in the same circumstances to act as the defendant did."

*Gallegos*, 2001-NMCA-021, ¶ 9 (quoting UJI 14-5172).

**{18}**    A multiple assailant defense instruction should be issued when more than one assailant is involved in creating an immediate danger of death or great bodily harm toward the defendant. *State v. Cooper*, 1999-NMCA-159, ¶¶ 14-15, 128 N.M. 428, 993 P.2d 745 ("If supported by the evidence, the defendant is entitled to a self-defense instruction in which the jury considers threatened harm from all assailants, not just the one against whom the defendant may have retaliated."). In *State v. Coffin*, this Court stated that "a person may act in self-defense against multiple attackers acting in concert, [but] this principle applies only to the extent that each accomplice poses an immediate danger of death or great bodily harm, thereby necessitating an act of self-defense." 1999-NMSC-038, ¶ 12, 128 N.M. 192, 991 P.2d 477.

**{19}**    Although McCormick's role in this incident is unclear, it is undisputed that he was with Arbizu and Ramos during the incident. There was testimony that while Arbizu and Ramos were confronting Defendant, McCormick looked as if he were searching for something in the back of the Explorer. We agree with the Court of Appeals that there was sufficient evidence to support the giving of these instructions. *Sandoval*, 2010-NMCA-025, ¶¶ 24, 26. We now determine whether the issued instructions constituted fundamental error.

**B.    Fundamental Error in the Self-Defense and Defense of Another Jury Instructions**

**{20}**    In reviewing the self-defense and defense of another jury instructions for fundamental error, we first determine "whether a reasonable juror would have been confused or misdirected by the jury instruction[s]." *Barber*, 2004-NMSC-019, ¶ 19. If we conclude that a reasonable juror would have been confused or misdirected, then we "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *Id.* (quoting *Benally*, 2001-NMSC-033, ¶ 24 (Baca, J., dissenting)).

**{21}**    "A juror may suffer from confusion or misdirection despite the fact that the juror considers the instruction straightforward and perfectly comprehensible on its face." *Benally*, 2001-NMSC-033, ¶ 12 (internal quotation marks and citation omitted). "Thus, juror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.*

6

**{22}** Two cases, *Coffin*, 1999-NMSC-038, and *Cooper*, 1999-NMCA-159, have addressed the self-defense or defense of another instructions when there are multiple assailants involved. A self-defense or defense of another jury instruction is normally "justified when force is directed toward a person posing a threat of imminent bodily harm." *Cooper*, 1999-NMCA-159, ¶ 8. A self-defense or defense of another instruction may also be justified when more than one assailant is involved in creating an immediate threat of death or great bodily harm toward the defendant or another and the assailants were acting in concert. *Coffin*, 1999-NMSC-038, ¶ 12.

**{23}** In *Coffin*, the defendant fatally shot a father and son, members of a rival gang, after they approached the defendant in a liquor store parking lot. *Id.* ¶¶ 3-7. At trial, the defendant requested a self-defense instruction based on the fact that he saw the father reach in his pocket for a weapon and that the son "was not wearing a shirt even though it was a relatively cold night, which, according to [the defendant], indicated an aggressive posture." *Id.* ¶ 11. The trial court accepted the defendant's self-defense jury instruction which described the appearance of immediate death or great bodily harm in the context of both the father and the son approaching the defendant. *Id.* On appeal, the defendant argued that the trial court erred in denying his proffered jury instruction, based on an accomplice liability theory, which he felt "would have elaborated on his claim of self-defense and provocation." *Id.* ¶ 1. This Court held that "[t]he jury instruction on self-defense in this case included both [the father and the son] and their alleged threatening actions and, thus, accurately and adequately reflected [the defendant's] argument" that both were acting in concert in threatening the defendant. *Id.* ¶ 13. To have issued the defendant's proffered instruction based on accomplice liability "would have allowed a claim of self-defense against an accomplice to an attacker despite the fact that the accomplice posed no immediate danger of death or great bodily harm and despite a lack of necessity for the actions against the accomplice." *Id.* ¶ 12.

**{24}** In *Cooper,* the Court of Appeals held that the trial court erred in refusing the defendant's self-defense instruction based on a multiple assailant theory. 1999-NMCA-159, ¶ 1. In that case, the defendant's estranged wife came to his house to gather her things, accompanied by a male friend carrying a gun. *Id.* ¶¶ 3-4. The defendant became scared and grabbed his wife, allegedly holding a knife to her throat, using her as a shield against the man. *Id.* ¶ 4. The trial court denied the defendant's self-defense jury instruction, which alleged an appearance of immediate death or great bodily harm when he saw the man with a gun, and acted against wife because of his fear of death or great bodily harm. *Id.* ¶¶ 1, 22. The defendant was convicted of aggravated assault against a household member. *Id.* ¶ 1.

**{25}** Even though the wife did not pose an immediate threat of death or great bodily harm, the Court recognized that, based on the circumstances, it was not unreasonable for the defendant to believe that the wife acted *in concert* with the man with a gun, and therefore the wife was an assailant. *Id.* ¶ 17. "If such a response is not unreasonable as a matter of law, then [the defendant is] entitled to an opportunity to prove his defense theory, supported by an appropriate jury instruction." *Id.* ¶ 17. In creating an appropriate multiple assailant

7

jury instruction, all assailants must be included in the description of the imminent threat of death or great bodily harm. *Id.* ¶ 11. To omit an assailant from the description of the imminent threat of death or great bodily harm is a misstatement of the law that essentially allows the jury to find that the defendant acted in self-defense against an innocent bystander. *Id.* ¶ 22.

**{26}** In this case, the self-defense and defense of another jury instructions stated that the killing of McCormick was in self-defense or defense of another if "[t]here was an appearance of immediate danger of death or great bodily harm to [Defendant] as a result of his confrontation with Ross Ramos and James Arbizu." Due to the omission of McCormick as an assailant in the instruction, the jury could have found that Defendant acted in self-defense or defense of another against McCormick merely as a result of Defendant's confrontation with Arbizu and Ramos. Although the self-defense and defense of another instructions appeared straightforward, the omission of McCormick as an assailant in the instructions did not properly reflect the law regarding multiple assailants, and thus was error. *Id.* ¶ 22. Therefore, we now place the jury instructions within the facts and circumstances of this case to determine whether Defendant's conviction was a plain miscarriage of justice, hence constituting fundamental error. *Barber*, 2004-NMSC-019, ¶ 19.

**{27}** While there is no dispute that an altercation between Defendant, Ramos, and Arbizu ensued on the side of the road, the role that McCormick played in the altercation is vague. Witnesses, other than Arbizu, included Sanchez, who testified for the State, and Girlfriend, who testified for Defendant. When Sanchez was asked how many individuals he saw engaged in the confrontation, he responded to have "only seen the two outside of the vehicles." On cross-examination, Sanchez agreed that he did not know McCormick was in the Explorer until he approached the scene after Defendant and Girlfriend had left.

**{28}** Girlfriend admitted that she did not know anyone was in the back seat of the Explorer until the back passenger door opened. Girlfriend's assumption that McCormick was searching for a weapon was "[b]ased on what I could think and with two other people attacking us, at that point that was the only thing that I could assume he was doing." On cross-examination, Girlfriend admitted that when she was at the gas station, she was not aware of a third person in the Explorer.

**{29}** Although we agree that there was sufficient evidence for Defendant to receive the self-defense and defense of another jury instructions, the jury could have viewed the evidence as depicting McCormick as either an assailant or as a bystander. Regardless of how the jury viewed the evidence, the omission of McCormick from the instructions did not preclude Defendant from presenting his multiple assailant claim to the jury. Defendant claimed that he was acting in self-defense and defense of another against multiple assailants, Arbizu, Ramos, and McCormick. The State presented evidence that countered Defendant's theory, arguing that McCormick did not pose a threat of death or great bodily harm because he was not one of the multiple assailants. Ultimately, the jury chose to accept the State's theory of the case and reject Defendant's theory. *See Coffin*, 1999-NMSC-045, ¶ 13

8

(holding that the State introduced evidence from which the jury could infer that one or both of the victims did not pose an immediate danger of death or great bodily harm, and that the verdict illustrates the jury's acceptance of the State's evidence, rejecting the defendant's argument).  The facts, which were vague as to McCormick's role in the incident, combined with the circumstances of this case, primarily that Defendant was not precluded from presenting his multiple assailant claim to the jury, lead us to conclude that Defendant's conviction was not a plain miscarriage of justice.

## IV.    CONCLUSION

**{30}**    The omission of McCormick as an assailant in the self-defense and defense of another jury instructions did not properly reflect the law regarding multiple assailants. Under the circumstances in this case, primarily that Defendant was not precluded from presenting his multiple assailant claim to the jury, Defendant's conviction was not a plain miscarriage of justice and the self-defense and defense of another jury instructions did not constitute fundamental error.  We reverse and remand to the Court of Appeals to consider the issues not previously addressed.

**{31}    IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**


_____
**PATRICIO M. SERNA, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _State v. Sandoval_, Docket No. 31,409**

**AE**                **APPEAL AND ERROR**
AE-FE                Fundamental Error
AE-PA                Preservation of Issues for Appeal
AE-SR                Standard of Review

9

**CA**          **CRIMINAL PROCEDURE**
CA-SD          Self-defense
               See Also, CONSTITUTIONAL LAW, Self-defense

**JI**          **JURY INSTRUCTIONS**
JI-CJ          Criminal Jury Instructions
JI-FG          Failure to Give or Request
JI-IJ          Improper Jury Instructions
JI-JI          Jury Instructions, General