This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.** No. 33,626

**ERESMO BACA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Mary L. Marlowe, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

{1}     Defendant appeals his conviction for aggravated battery (great bodily harm).

Our notice proposed to affirm, and Defendant filed a memorandum in opposition and

motion to amend the docketing statement. We deny Defendant's motion to amend and remain unpersuaded by Defendant's arguments. We therefore affirm.

{2} As an initial matter, we note that the memorandum in opposition's designation of the issues does not correlate with the designation of the issues as provided in the docketing statement and notice. For consistency, we continue to designate the issues as provided in the docketing statement and notice, and request that counsel maintain consistency in any future pleadings he may file in this Court.

{3} In issue (1), Defendant continues to argue that the district court erred in admitting evidence that Victim died from his injuries. [DS 19; MIO 15] As set forth in our notice, to prove the element of great bodily harm as required for Defendant's aggravated battery conviction, *see* NMSA 1978, § 30-3-5(C) (1969), the State relied on the doctors' testimony describing Victim's injuries, which included testimony relating Victim's death as a consequence of his injuries. [CN 3] In his memorandum in opposition, Defendant disputes the notice's view that Victim's death was inseparable from the doctors' thorough description of the extent and severity of Victim's injuries as they related to great bodily harm. [MIO 18] In doing so, Defendant asserts that Victim's great bodily harm could have been proved without specifically referencing Victim's death, for example, by relying on evidence that Victim suffered "severe skull fractures and numerous intra-cranial hematomas" [MIO

16] and that Victim was hospitalized and placed on life support for nine days. [MIO 17] Given this evidence, rather than admit evidence of Victim's actual death, Defendant argues that the State could have instead asked the doctors whether Victim's injuries were the kinds of injuries that are normally life-threatening and/or typically result in permanent or prolonged impairment. [MIO 17]

{4} However, the circumstances of this case do not call for any elicitation of opinion testimony from the doctors as to whether Victim's injuries were life-threatening or could result in permanent impairment, because Victim's death in fact amply demonstrated that he suffered great bodily harm. *See, e.g.*, *State v. Dominguez*, 2005-NMSC-001, ¶ 11, 137 N.M. 1, 106 P.3d 563 (recognizing that "[f]actually, evidence that an injury has actually caused death may be used to demonstrate the element of great bodily harm"), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 54, 306 P.3d 426. And given that Victim's death was integrally related to his head injury, Defendant's continued comparison to the circumstances in *State v. Aragon*, 1993-NMCA-076, 116 N.M. 291, 861 P.2d 972, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110, is misguided. [DS 20; MIO 18-19] In *Aragon*, consideration of whether references to the victim's death merited a mistrial was a more sensitive matter for a number of reasons, including that "medical evidence indicated that the cause of the victim's death may have related to

subsequent medical treatment" rather than to the serious head injuries inflicted upon him by the defendant. 1993-NMCA-076, ¶ 1. In contrast, in this case, the fact of Victim's death was directly related to the extent and severity of the injuries inflicted by Defendant, and therefore was properly admitted to prove great bodily harm.

{5}     And lastly, the fact that Victim's death was highly probative and competent evidence for purposes of proving great bodily harm is not a reason by itself to deem it too prejudicial. [DS 17; MIO 16, 17] *See, e.g.*, *State v. Otto*, 2007-NMSC-012, ¶ 16, 141 N.M. 443, 157 P.3d 8 (providing that evidence is not unfairly prejudicial simply because it may tend to inculpate a defendant). Similarly, Defendant's speculation that Victim's death inflamed the jury's passions [MIO 18] does not compel exclusion of the fact of Victim's death. *See State v. Flores*, 2010-NMSC-002, ¶ 34, 147 N.M. 542, 226 P.3d 641 (recognizing that the fact that some jurors might find probative evidence offensive or inflammatory does not necessarily require its exclusion). Instead, because Victim's death was integrally related to the extent and severity of his injuries, we conclude that the district court did not abuse its discretion in admitting evidence of Victim's death to prove great bodily harm. *See State v. Kent*, 2006-NMCA-134, ¶ 18, 140 N.M. 606, 145 P.3d 86 (providing that we examine the admission of evidence for abuse of discretion, and the district court's determination will not be disturbed absent a clear abuse of such discretion).

4

{6}     In issue (2), Defendant continues to argue that the district court erred in admitting photographs of Victim's injuries because they were cumulative of the doctors' testimony. [DS 19; MIO 15, 19] As set forth in our notice, the photographs were used by the doctors to aid them in describing the extent and severity of Victim's injuries [DS 15-16] Given this, we conclude that the district court did not abuse its discretion in admitting the photographs. *See State v. Pettigrew*, 1993-NMCA-095, ¶ 10, 116 N.M. 135, 860 P.2d 777 (recognizing that the reviewing court gives trial courts great discretion in balancing the prejudicial impact of a photograph against its probative value); *State v. Ho'o*, 1982-NMCA-158, ¶¶ 19-20, 99 N.M. 140, 654 P.2d 1040 (holding that photographs are properly admitted within the discretion of the trial court when they are corroborative of other relevant evidence adduced at the trial and reasonably relevant to material issues at trial).

{7}     In issue (3), Defendant continues to challenge the sufficiency of the evidence to support his conviction [DS 19], specifically arguing that the State failed to prove that Defendant unlawfully caused great bodily harm to Victim. [MIO 9] *See generally State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 (setting forth our standard of review).

{8}     When reviewing Defendant's sufficiency challenge, we consider the evidence that when the fight was over and Victim was in a kneeling position, Defendant ran up

to Victim from several feet away, jumped into the air and hit Victim in the back of his head with his fist, and caused Victim to fall to the ground. [DS 11, 12; MIO 12] We consider also that a witness heard a "big sound like somebody hitting the ground very hard" [DS 15; MIO 5, 9, 13], and that Victim suffered severe head injuries [DS 4, 16] that led to his coma and death. [DS 15] Based on the foregoing evidence, we conclude that a jury could reasonably determine that Defendant unlawfully caused Victim's head injury by jumping and hitting Victim on the head with such force that it caused Victim, in turn, to fall from his kneeling position and hit his head on the ground with a corresponding force that caused him great bodily harm. *See generally State v. Sparks*, 1985-NMCA-004, ¶¶ 6-7, 102 N.M. 317, 694 P.2d 1382 (defining substantial evidence as evidence that a reasonable person would consider adequate to support a defendant's conviction).

{9} Despite this evidence, Defendant emphasizes several arguments in his continued sufficiency challenge. First, Defendant points out that there were two incidents during the altercation where Victim fell to the ground [MIO 12]: the first incident where Victim "landed the first punch" [MIO 4] and was the first aggressor [MIO 13], causing both Victim and Defendant to fall to the ground from standing positions [MIO 3, 4]; and the second incident, as described above, where Defendant—after the fight was over—ran and jumped into the air and hit kneeling

6

Victim in the back of his head with his fist, causing Victim to fall to the ground and hit his head. [DS 11, 12; MIO 12] In Defendant's view, Victim's actions in the first incident—against which Defendant contends he lawfully defended himself—caused Victim to fall to the ground and suffer his consequent head injuries. [MIO 12-14]

{10} While Defendant believes the first incident for which he asserts he bore no responsibility was the cause of Victim's head injuries, it was the fact finder's prerogative to weigh the evidence and reject Defendant's version of which incident caused Victim's head injuries. *See generally State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay); *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (recognizing that the jury is free to reject the defendant's version of the facts). Thus, Defendant's assertion that the evidence was "equally consistent" with his hypothesis of innocence that the first incident caused Victim's great bodily harm [MIO 10-11] is unavailing because, by convicting Defendant, the fact finder necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence. *See State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393 ("When a defendant argues that the evidence and inferences present two equally reasonable hypotheses, one consistent with guilt and another consistent with innocence, our answer is that by

its verdict, the [fact finder] has necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence.").

{11}     We consider also Defendant's argument that the "physical facts of the case" [MIO 11] do not support a conclusion that Victim suffered great bodily harm as a consequence of the fall in the second incident. [MIO 13] As support for this argument, Defendant refers to testimony of Dr. Melisi, who testified that it was unlikely that Victim's head injuries were caused by a punch to the head and more likely that the injuries were caused by a fall. [MIO 7, 13] In addition, Defendant refers to the testimony of Dr. Proe, who opined that the force necessary to cause Victim's injuries was greater than from a punch to the head [MIO 14] and could not have happened from a fall from a kneeling position. [MIO 8] While Defendant views the doctors' testimony as precluding a finding that the fall in the second incident caused Victim's head injuries, we conclude that the jury could have reasonably determined otherwise. In this regard, the jury could have viewed the doctors' cumulative testimony that Victim's head injuries were caused by a fall, and concluded that Victim's fall from his kneeling position, compounded by the force of Defendant's fist hit to Victim's head, caused the injuries.

{12}     We lastly consider Defendant's motion to amend the docketing statement to argue two un-preserved jury instruction issues. *See State v. Benally*, 2001-NMSC-033,

¶ 12, 131 N.M. 258, 34 P.3d 1134 (providing that if a jury instruction issue has not been preserved, this Court reviews for fundamental error); *see also State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (providing that when this Court reviews jury instructions for fundamental error, we will only reverse the jury verdict if doing so is "necessary to prevent a miscarriage of justice" (internal quotation marks and citation omitted)). First, Defendant seeks to argue that "[f]undamental error arose from the [district] court's instruction to the jury on the first aggressor limitation to self-defense when there was no evidence that [Defendant] started the fight." [RP 137; MIO 20] This argument is unavailing. As discussed, evidence was presented that after the [initial] fight was "over" [MIO 7, 9], Defendant instigated the second incident by running up to the kneeling Victim and hitting his head with his fist with such force that it caused Victim to fall down and hit his head on the ground. Because there was evidence Defendant started another fight by instigating the second incident, submission of the first aggressor jury instruction was appropriate. Because we conclude this issue is not viable, we deny Defendant's motion to amend to add this issue. *See State v. Sommer*, 1994-NMCA-070, ¶ 11, 118 N.M. 58, 878 P.2d 1007 (denying a motion to amend the docketing statement based upon a determination that the argument sought to be raised was not viable).

9

{13} Defendant additionally seeks to amend his docketing statement to argue that fundamental error arose because the self-defense jury instruction [RP 135] did not instruct the jury on multiple assailant principles, but instead gave only a simple self-defense instruction. [MIO 24; RP 135] *See generally State v. Cooper*, 1999-NMCA-159, ¶ 11, 128 N.M. 428, 993 P.2d 745 (providing that "[i]f supported by the evidence, the defendant is entitled to a self-defense instruction in which the jury considers threatened harm from all assailants, not just the one against whom the defendant may have retaliated"). As support for his argument, Defendant provides that the jury heard evidence that Defendant "told the police when he was confronted by three aggressive panhandlers, and [Victim] began to threaten him, he became afraid of all three men." [MIO 24] While Defendant assertedly felt afraid of all three men, there is no indication that anyone other than Victim overtly threatened him. *Cf. id.* ("When two or more persons *undertake overt action to harm another*, the victim may use an appropriate amount of force to defend himself against either aggressor, or both of them." (emphasis added)). Moreover, Defendant was nonetheless not prevented from presenting his version of the events—namely, that his actions in the second incident were premised on his belief that "one or both of the other two men might also physically attack him now that their friend [Victim] had fallen," and that his actions in the second incident were thus necessary to make sure that Victim was no longer a

threat for purposes of joining in an attack along with his friends. [MIO 26] *See generally Sandoval*, 2011-NMSC-022, ¶ 29 (concluding that the omission of one of the assailants in the self-defense jury instruction did not constitute fundamental error because the defendant was not precluded from presenting his multiple assailant theory to the jury). Because we conclude this issue is not viable, we deny Defendant's motion to amend to add this issue. *See Sommer*, 1994-NMCA-070, ¶ 11 (denying a motion to amend the docketing statement based upon a determination that the argument sought to be raised was not viable).

{14}     To conclude, based on the reasoning set forth in our notice and in the foregoing discussion, we affirm.

{15}     **IT IS SO ORDERED.**


_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**TIMOTHY L. GARCIA, Judge**

11