This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**

    Plaintiff-Appellee,

v.                                 **NO. 34,708**

**EUGENE E. GONZALES,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**John M. Paternoster, Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Judge.**

{1} Defendant Eugene Gonzales appeals from his conviction of voluntary

manslaughter contrary to NMSA 1978, Section 30-2-3(A) (1994). Defendant argues that the district court erred when it denied Defendant's proffered jury instructions for self-defense and defense of another. We affirm.

**BACKGROUND**

{2}     Defendant raised his daughter, Selina, from a young age. When Selina was nineteen years old, she began to use methamphetamine and started dating Augustine Grano (Victim), a sixty-one year old man. Victim had a reputation in the community as a drug dealer with a violent past, and it was rumored that Victim also carried a gun. Defendant did not approve of Selina dating Victim, which he made known to Victim. However, there was no indication that Selina was in the relationship with Victim involuntarily, or that Victim abused Selina.

{3}     Defendant and Victim had multiple encounters that Defendant considered threatening. On one occasion, Victim rode his bicycle around Defendant on his way to the post office. Defendant contends that when he told Victim that Victim would date Selina "over [his] dead body," Victim suggested "that could be done, something like that." However, as the State points out, Defendant stated that he only speculated that Victim said something to this effect. On multiple occasions, when Defendant saw Victim in public, Victim would yell obscenities at Defendant, grab his genitals, and "flip the birdie" at Defendant.

**{4}** After Selina failed to return home one evening, Defendant had a bout of anxiety and "couldn't take it anymore." Defendant was worried for Selina's safety, feared that she would overdose, and decided to go to Victim's house to bring her home. Defendant armed himself with a .22 caliber revolver before he went to Victim's home in light of the rumors that Victim carried a gun. When he arrived at Victim's residence, Victim, who was unarmed, stepped in Defendant's direction, and asked Defendant "What are you going to do now old man, shoot me?" Defendant then shot Victim.

**{5}** Selina was inside the Victim's residence, and after she heard the shot, she ran to the back of the house where Defendant yelled for her to call 911. When Selina asked Defendant what had happened to Victim, he stated "I told him not to f\*\*k with me Selina." Selina left the scene and Defendant called 911. Defendant told the 911 operator "I just shot a man dead in the head . . . I'm guilty . . . I'm guilty of it because I told him I was gonna kill him . . . I just want to be picked up cause I'm guilty of it." Defendant put his gun in his vehicle and waited for law enforcement to arrive. At the scene, Defendant voluntarily told an EMT that "he did what he had to do" and also told an officer that "I shot the son of a bitch."

**{6}** After both parties rested, Defendant requested that the jury be instructed on self-defense under UJI 14-5171 NMRA. Defendant also requested a separate instruction for defense of another under UJI 14-5172 NMRA. The district court

3

rejected giving both instructions. The jury convicted Defendant of voluntary manslaughter as a lesser included offense to the charge of second degree murder. Defendant appeals.

**DISCUSSION**

{7}     Defendant argues that the district court erred when it rejected giving Defendant's requested instructions on self-defense and defense of another. We disagree and therefore affirm the district court.

**Standard of Review**

{8}     A defendant is entitled to a jury instruction on his theory of the case if there is evidence to support the instruction. The failure to give a requested instruction which the evidence supports constitutes reversible error. *State v. Brown*, 1996-NMSC-073, ¶ 34, 122 N.M. 724, 931 P.2d 69. "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. This Court reviews a defendant's requested instruction in a light most favorable to the giving of the requested instruction. *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355. Therefore, in our analysis, "we review the evidence in the light most favorable to the giving of the self-defense or defense of another instruction." *State v. Sandoval*, 2011-NMSC-022, ¶ 2, 150 N.M. 224, 258 P.3d 1016 (alteration, internal quotation marks, and citation omitted).

## A. Self-Defense

{9} We first turn to Defendant's argument that he was entitled to a self-defense instruction. Defendant was entitled to this instruction if there was evidence that showed: "(1) [D]efendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) [D]efendant acted reasonably when he or she killed." *Id.* ¶ 17 (internal quotation marks and citation omitted); *see* UJI 14-5171. "The first two requirements, the appearance of immediate danger and actual fear, are subjective in that they focus on the perception of the defendant at the time of the incident. By contrast, the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170 (internal quotation marks and citation omitted).

### 1. Defendant's Fear

{10} We first examine whether the evidence is sufficient to cause "reasonable minds [to] differ," about whether Victim caused Defendant to be put in fear of an apparent danger of immediate death or great bodily harm. *Sandoval*, 2011-NMSC-022, ¶ 17. Defendant contends that he was in fear for his life since he heard Victim had a reputation for carrying a weapon, that Victim had a violent reputation, and that Victim had harassed Defendant in the past.

{11} "It is important to view the circumstances at the time the deadly force was used

5

by the defendant and not at some earlier point." *Rudolfo*, 2008-NMSC-036, ¶ 18. As such, we look to the circumstances at the time Defendant confronted Victim at his home. When Defendant went to Victim's home, Victim was unarmed and took a step toward Defendant who reacted with gunfire. Moreover, after the shooting, Defendant told Selina, "I told him not to f**k with me Selina" and confessed that he had shot Victim to police and emergency personnel, without mentioning any perception of danger of death, or great bodily harm arising from Victim's behavior. Thus, the evidence fails to raise an issue as to whether Defendant believed he was in "apparent danger of immediate death or great bodily harm" from Victim's behavior at the time of the shooting. *State v. Gonzales*, 2007-NMSC-059, ¶ 20, 143 N.M. 25, 172 P.3d 162.

**2.     Shooting of Victim Resulting From Fear**

{12}     Next, we examine whether Victim's shooting resulted from Defendant's fear of an apparent danger of immediate death or great bodily harm. We recognize that "[a] defendant's knowledge or intent generally presents a question of fact for a jury to decide." *State v. Wasson*, 1998-NMCA-087, ¶ 12, 125 N.M. 656, 964 P.2d 820. Further, "[i]ntent is subjective and is almost always inferred from other facts in the case." *State v. Frank*, 1979-NMSC-012, ¶ 11, 92 N.M. 456, 589 P.2d 1047. Finally, conflicts in the testimony are for the fact-finder to weigh and resolve. *See State v. Rivera*, 2010-NMCA-109, ¶ 16, 149 N.M. 406, 249 P.3d 944 ("Conflicts in the

6

evidence, even within the testimony of a witness, are to be resolved by the fact[-]finder at trial." (internal quotation marks and citation omitted)), *aff'd in part, rev'd in part on other grounds*, 2012-NMSC-003, 268 P.3d 40.

{13}     Here, however, Defendant stated to the 911 operator, law enforcement, and emergency personnel that he shot Victim. At no time, did Defendant mention, nor does the evidence support a finding, that Defendant shot Victim because of fear for his own safety, and Defendant's own testimony contravenes any assertion that he shot Victim as a result of a fear of immediate death or great bodily harm. As such, we conclude the evidence is insufficient to raise a question on the second element of the instruction.

**3.     Reasonableness of Defendant's Actions**

{14}     Because the evidence fails to raise a question as to whether (1) Defendant was put in fear of an apparent danger of immediate death or great bodily harm; and (2) killing Victim resulted from that fear, we conclude that a reasonable person in the same circumstances would not have acted as Defendant did.

{15}     In summary, although "there need be only enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense[,]" *Rudolfo*, 2008-NMSC-036, ¶ 27, we conclude that the evidence here fails to meet that standard. In addition, Defendant was the original aggressor of the interaction, and as such, he is not necessarily entitled to a self-defense instruction.

7

"The rule is well established in this jurisdiction that a defendant who provokes an encounter, as a result of which he [or she] finds it necessary to use deadly force to defend himself [or herself], is guilty of an unlawful homicide and cannot avail himself [or herself] of the claim that he [or she] was acting in self-defense." *State v. Lucero*, 1998-NMSC-044, ¶ 7, 126 N.M. 552, 972 P.2d 1143 (alteration in original) (internal quotation marks and citation omitted).

{16}   For all the foregoing reasons, we conclude that Defendant was not entitled to a self-defense instruction. *See Rudolfo*, 2008-NMSC-036, ¶ 17 ("A defendant is not entitled to a self-defense instruction unless it is justified by sufficient evidence on every element of self-defense.").

**B.    Defense of Another**

{17}   Next, Defendant argues that the district court erred when it denied his instruction on defense of another under UJI 14-5172. Defendant was entitled to the instruction if there was evidence that: "(1) there was an appearance of death or great bodily harm to a person; (2) [D]efendant believed the person was in immediate danger of death or great bodily harm . . . ; and (3) the apparent danger would have caused a reasonable person in the same circumstances to act as [D]efendant did." *Sandoval*, 2011-NMSC-022, ¶ 17 (internal quotation marks and citation omitted); *see* UJI 14-5172.

**1.    Appearance of Immediate Danger of Death or Great Bodily Harm To**

8

**Selina**

{18}     The evidence presented at trial fails to raise a question on this element as there was no appearance of an immediate danger of death or great bodily harm to Selina resulting from Victim's acts. Therefore, there was insufficient evidence as to this element.

**2.     Shooting Victim as a Result of Belief that Selina Was in Immediate Danger of Death or Great Bodily Harm**

{19}     The evidence is likewise insufficient to cause reasonable minds to differ as to whether Defendant believed Selina was in immediate danger of death or great bodily harm when Defendant shot Victim.

{20}     Defendant stated that he had an anxiety attack and "couldn't take it anymore" when Selina left his home, voluntarily, and did not return as planned. In his brief, Defendant states that "Selina's . . . prolonged absence meant that she might have overdosed . . . at [Victim's] home." Although these beliefs are understandable given the circumstances, there is no indication that Defendant shot Victim believing that Selina was in *immediate* danger of death or great bodily harm from Victim. In short, there was no evidence that Victim was causing an immediate danger of death or great bodily harm to Selina and that Defendant shot Victim to prevent that harm.

**3.     Reasonableness of Defendant's Actions**

{21}     Because the evidence fails to raise a question as to whether (1) there was an

9

appearance of immediate danger of death or great bodily harm to Selina; or (2) that Defendant believed there was an immediate danger of death or great bodily harm to Selina when Defendant shot Victim, we conclude that reasonable minds would not differ as to whether a reasonable person would have acted in the same manner as Defendant. *See Sandoval*, 2011-NMSC-022, ¶ 17, (citing to UJI 14-5171 and noting the requirement that the "apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did" (internal quotation marks and citation omitted)).

{22} Defendant was not entitled to his requested instruction on defense of another under UJI 14-5172. *See Rudolfo*, 2008-NMSC-036, ¶ 17 ("A defendant is not entitled to a self-defense instruction unless it is justified by sufficient evidence on every element of self-defense."); *see also Sandoval*, 2011-NMSC-022, ¶ 16 (stating that because self-defense and defense of another are treated virtually identically for purposes of analysis, "assertions made regarding self-defense instructions are also assumed to apply to defense of another instructions").

**CONCLUSION**

{23} The judgment and sentence is affirmed.

{24} **IT IS SO ORDERED**.

_____
**MICHAEL E. VIGIL, Judge**

10

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**TIMOTHY L. GARCIA, Judge**