This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: June 2, 2025**

**No. S-1-SC-39940**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JIMMIE ATKINS,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Bennett J. Baur, Chief Public Defender
Steven J. Forsberg, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Charles J. Gutierrez, Assistant Solicitor General
Santa Fe, NM

for Appellee

## DECISION

**ZAMORA, Justice.**

## I.    INTRODUCTION

**{1}** Defendant, Jimmie Atkins, appeals his convictions pursuant to Rule 12-102(A)(1) NMRA, for two counts of felony murder, contrary to NMSA 1978, Section 30-2-1(A)(2) (1994), arising from the kidnapping and killing of two teenage victims, Collin Romero (15) and Ahmed Lateef (14), and the armed robbery of Lateef. Defendant committed

these crimes with two co-defendants, Stephen Goldman Jr. and Julio Almentero. Defendant argues this Court should reverse his convictions because the district court "inadequately" responded to a question from the jury and "the jury's verdicts did not indicate that the confusion had been eliminated." We affirm and exercise our discretion to decide this appeal by non-precedential decision because New Mexico precedent sufficiently addresses the issues presented. *See* Rule 12-405(B)(1) NMRA.

## II.    BACKGROUND

**{2}**    Three people, including Defendant, were convicted of two counts of first-degree felony murder for the killing of Lateef and Romero. Lateef and Romero were at the house of their friend, Jonathan Gonzalez, just before their deaths. After a discussion via Snapchat while at Gonzalez's house, Lateef agreed to meet with Goldman with the intent of purchasing a firearm in exchange for some cash and marijuana. However, when Lateef arrived at the agreed upon meeting location, Goldman was not alone, but arrived accompanied by Defendant and Almentero. Lateef entered Goldman's vehicle and left the meeting spot with the three co-defendants. Soon after, Goldman uploaded two videos to Snapchat, depicting Almentero beating Lateef in the back seat of the moving vehicle while Defendant sat in the passenger seat.

**{3}**    Following these events, Lateef returned to Gonzalez's home and told Gonzalez and Romero that Goldman did not believe the marijuana weighed a half-ounce. After weighing and taking a photo of the marijuana, Lateef went back outside to meet Goldman, Almentero, and Defendant. Lateef then called Romero and requested that Romero bring out two more ounces of marijuana and Lateef's wallet because Goldman wanted change. Romero complied and joined Lateef in the vehicle driven by Goldman. Romero and Lateef then left with the Defendant and co-defendants and while in the car, Defendant uploaded a third and final snapchat video that shows both Lateef and Romero in the vehicle's back seat with blood coming from their faces and bare torsos while Defendant taunts and laughs at them. Romero and Lateef were killed near the mesa on the western edge of Albuquerque. Romero had been shot nine times and Lateef had been shot nineteen times.

**{4}**    Afterwards, Goldman used Defendant's phone to call Almentero's uncle, Anthony Aragon, who agreed to meet the co-defendants at a nearby location. Aragon testified the co-defendants and the back of the vehicle were bloodied and Goldman informed Aragon that they had "some things in the trunk," which Aragon understood to mean that there were bodies in the trunk. Aragon helped the co-defendants wash the vehicle at a nearby carwash, before telling Almentero and Goldman to leave. After Almentero and Goldman left, Aragon stayed behind with Defendant and purchased cleaning supplies for the vehicle and joined Defendant in disposing of Romero's and Lateef's bodies on the mesa, placing them behind a tree. A few days later, Aragon accompanied Defendant back to the mesa to bury the bodies.

**{5}**    At trial, the jury received instruction on two counts of first-degree deliberate-intent murder, one for each of the two victims. Each of these counts included second-degree murder as the lesser included offense and an alternate charge of felony murder. The

jury was given a step-down instruction to aid in its decision. After entering deliberations, the jury submitted the question, "Can the defendants be found guilty of second-degree murder and felony murder?" The district court read this question to the parties and, based on the step-down instruction, proposed responding "yes" to the jury's question. The district court explained that the jury could convict on both charges because felony murder was instructed as an alternative and the charges contained different elements. The district court then brought the jury in to give its response to its question and the foreman said that the jury was "more than anything, trying to find a clarification on how alternative sentencing works." Over objection, the court instructed the jury, "I don't think we can really give you any detailed explanation with regard to it except to say 'yes' and that you have to follow the jury instructions that [were] presented to you and that's the best that we can do."

{6} The jury returned a verdict convicting Defendant of both counts of felony murder, but not of second-degree murder. Defendant was ultimately charged and convicted of two counts of felony murder, two counts of kidnapping, conspiracy to commit kidnapping, the armed robbery of Lateef, conspiracy to commit armed robbery, three counts of tampering with evidence, and conspiracy to commit tampering with evidence. The district court vacated Defendant's convictions for kidnapping and armed robbery on double jeopardy grounds. Defendant now appeals his convictions for felony murder.

## III.    DISCUSSION

{7} Defendant argues that this Court must reverse his convictions because the felony murder and step-down instructions caused juror confusion. Notably, on appeal Defendant does not challenge the written jury instructions for felony murder, which mirrored UJI 14-202 NMRA, or the step-down instructions, which mirrored UJI 14-6002B NMRA. Instead, he argues reversal is required because the district court "inadequately" responded "yes," to the jury's question on whether Defendants could be found guilty of both second-degree murder and felony murder and "the jury's verdicts did not indicate that the confusion had been eliminated."

{8} As a preliminary matter, we note it is Defendant's burden on appeal to demonstrate the district court erred in instructing the jury. *See State v. Doyal*, 2023-NMCA-015, ¶ 6, 525 P.3d 412. However, Defendant fails to explain why the district court's instruction to the jury in response to its question was inadequate, and fails to clearly articulate why the jury's verdict demonstrated persistent confusion. Additionally, Defendant cites to a total of three cases, none of which support his argument. *See Lee v. Lee (In re Doe)* 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (explaining when a party fails to cite to authority that supports their argument, this Court assumes that counsel was unable to find such authority and refrains from doing this research for counsel). Finally, instead of clarifying his arguments or responding to the State's argument that Defendant's briefing is so incomplete that this Court should refuse to reach Defendant's argument, Defendant filed a notice of non-reply.

{9} This Court has repeatedly stated, "[w]e will not review unclear arguments, or guess at what [a party's] arguments might be." *Elane Photography, LLC v. Willock*,

2013-NMSC-040, ¶ 70, 309 P.3d 53 (second alternation in original) (internal quotation marks and citation omitted); *see also State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining appellate courts do not review undeveloped or unclear arguments). Despite the shortcoming of Defendant's argument and briefing to this Court, we proceed to review the merits of his claim.

**{10}** Although unclear, we understand Defendant's argument to be that the district court's instruction in response to the jury's question was inadequate either because it was not an accurate statement of the law or because it did not address the jury's confusion under *State v. Veleta*, 2023-NMSC-024, 538 P.3d 51. Defendant's argument fails under either theory. In light of Defendant's sparse briefing, the State argues this Court should reject Defendant's argument because he has not established any error in the court's instruction to the jury in response to its question that would "confuse or misdirect a reasonable juror." We hold the district court's response to the jury's question was not in error because it was an accurate statement of the law and the instruction would not have confused or misled a reasonable juror. As Defendant failed to meet his burden to establish otherwise, we affirm Defendant's felony murder convictions.

## A.    Standard of Review

**{11}** "The propriety of jury instructions given or denied is a mixed question of law and fact" which we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. We review for reversible error because Defendant objected to the district court's proposed response to the jury's question and, therefore, preserved the issue. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. To decide whether reversible error has occurred, this Court must determine "whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Benally*, 2001-NMSC-033, ¶ 12. "Jury instructions are to be read and considered as a whole and when so considered they are proper if they fairly and accurately state the applicable law." *State v. Cabezuela*, 2011-NMSC-041, ¶ 21, 150 N.M. 654, 265 P.3d 705 (alteration, internal quotation marks, and citation omitted).

## B.    The District Court's Instruction in Response To the Jury's Question Did Not Result in Reversible Error

**{12}** Defendant argues reversal is required because the district court "inadequately" responded "yes," to the jury's question on whether defendants could be found guilty of both second-degree murder and felony murder and "the jury's verdicts did not indicate that the confusion had been eliminated." Defendant does not argue the district court's response was ambiguous or contradictory on its face. *See Benally*, 2001-NMSC-033, ¶ 12 (noting juror confusion can arise from "facially contradictory or ambiguous" instructions or inaccurate statements of law). Therefore, the district court's response to the jury's question would not have confused or misled a reasonable jury because it was

an accurate statement of the law and addressed the jury's point of confusion. Accordingly, the district court's response to the jury's question did not result in reversible error.

**1.      The district court's instruction in response to the jury question was an accurate statement of the law that would not confuse or mislead a reasonable juror**

**{13}**      First, the district court's instruction in response to the jury's question would not have confused or misled a reasonable jury because it was an accurate statement of the law. *See Cabezuela*, 2011-NMSC-041, ¶ 22 (explaining juror confusion can arise from an inaccurate statement of law). The step-down instruction for both counts of deliberate-intent and second-degree murder mirrored UJI 14-6002B and read as follows:

> To aid you in your deliberations and in returning your verdict, you will be provided both guilty and not guilty verdict forms for each of the crimes charged in Count[s 1 and 2]. Unless you unanimously agree on a verdict, you should not sign a verdict form for that crime. Although you may deliberate on the crimes charged in Count[s 1 and 2] in any manner and order which you choose, you must return your verdicts for each offense in Count[s 1 and 2] in the order they are instructed.
>
> Under this procedure, if you unanimously find the [D]efendant guilty of first degree murder by a deliberate killing you should sign the guilty verdict for the offense and should not proceed to reach a verdict on the remaining offense. If, after reasonable deliberation, you do not reach a unanimous verdict on first degree murder by a deliberate killing, you should not sign a verdict form for that offense and should not proceed to reach a verdict on the remaining offense.
>
> You should only return a verdict on second degree murder if you unanimously find [D]efendant not guilty of first degree murder by a deliberate killing. If you unanimously find the defendant not guilty of first degree murder by a deliberate killing you must sign the not guilty verdict form for first degree murder by a deliberate killing before returning a verdict on any other crime charged in Count[s 1 and 2] . . . .

Under this instruction, the jury could proceed to second-degree murder only if it unanimously acquitted him of deliberate intent murder. But no such restriction was placed on the jury's ability to find Defendant guilty of the alternate offense of felony murder; the jury could find him guilty of that offense irrespective of its verdicts on deliberate-intent or second-degree murder. The district court's response to the jury's question that the jury may find Defendant guilty of both second-degree murder and felony murder was an accurate statement of the law because it accurately represented the options available within the jury instructions and the jury instructions mirrored UJIs 14-6002B and 14-202. *See State v. Wilson*, 1994-NMSC-009, ¶ 5, 116 N.M. 793, 867 P.2d 1175 (explaining the presumption that uniform jury instructions "are correct

statements of law"); *see also State v. Ortiz-Para*, S-1-SC-37093, dec. ¶ 39 (N.M. May 28, 2020) (nonprecedential) (same). Aside from arguing the district court "inadequately" responded to the jury's question, Defendant has not argued or demonstrated that the district court's instruction was inaccurate or that the jury was confused or misled. *See Doyal*, 2023-NMCA-015, ¶ 6 (noting "it is [the d]efendant's burden on appeal to demonstrate any claimed error below" (internal quotation marks and citation omitted)). Therefore, the court's instruction to the jury in response to its question was an accurate statement of the law and would not have confused or misdirected a reasonable juror.

### 2. The district court's instruction in response to the jury's question addressed the jury's point of confusion.

**{14}** Second, the district court's response addressed the jury's point of confusion. Defendant argues, "the jury's verdict did not indicate that the confusion had been eliminated." In support of his position that juror confusion persisted, Defendant attempts to distinguish this case from the factually analogous *State v. Veleta*, 2023-NMSC-024, where the jury was instructed on first degree felony murder and, alternatively, first-degree murder with second-degree murder and manslaughter as lesser included offenses. *Id.* ¶ 28. In *Veleta*, the defendant argued reversal was required because the court's response to the jury's question did not address the jury's confusion. *Id.* ¶¶ 22, 28. There, the jury asked the court whether it could "charge both felony murder and [alternatively,] first-degree murder/second-degree murder/manslaughter." *Id.* ¶¶ 28, 30. The district court responded that "[t]he step-down instruction applies only to willful and deliberate murder." *Id.* The Court held the "jury was not confused or misled" by the court's response based on two points of reasoning. *Id.* ¶¶ 29-30. First, the Court reasoned the guilty verdicts returned for both felony murder and willful and deliberate first-degree murder demonstrated the district court correctly interpreted the jury's point of confusion. *Id.* ¶¶ 29-30. Second, absent any additional inquiries or expressions of confusion, the district court's response addressed the jury's confusion. *Id.* ¶¶ 29-30.

**{15}** Defendant argues this case differs from *Veleta* because the jury did not return guilty verdicts on both alternatives and only returned a guilty conviction for felony murder and not for willful and deliberate first-degree murder, nor the lesser included second-degree murder. In essence, Defendant argues that because the court instructed the jury that it could convict on both second-degree and felony murder, the jury had to return a verdict for either first-degree or second-degree murder along with felony murder to demonstrate that their confusion was addressed. While factually distinct from *Veleta* in this regard, Defendant overlooks the *Veleta* Court's focus on the jury's verdict was to determine whether the district court correctly interpreted the jury's point of confusion and whether the jury correctly applied the instruction to demonstrate any confusion had been eliminated.

**{16}** Here, there is no contention as to the jury's source of confusion and the jury correctly applied the additional instruction. The jury asked whether the Defendant could be found guilty of both second-degree murder and felony murder. Prior to receiving the court's response to its question, the foreman informed the court that the jury's question sought to clarify how to work through felony murder being charged as an alternate of

first-degree deliberate intent murder, as explained by the corresponding step-down instructions. Under the given instructions, the jury could only reach a verdict on second-degree murder if it unanimously found Defendant not guilty of first-degree deliberate murder. However, the jury was free to enter a verdict on felony murder notwithstanding whether or not verdicts were reached on first-degree deliberate or second-degree murder. Considering the district court's response to the jury's question, the jury was permitted, *but not required*, to enter verdicts for both felony murder and second-degree murder. Therefore, the jury's verdicts finding Defendant guilty of two counts of felony murder and not reaching a verdict on the other charged homicide offenses shows it understood and correctly applied the written and verbal instructions. Because the court's response to the jury's question directly addressed the jury's point of confusion and the jury correctly followed the instructions, the reasoning in *Veleta* would only warrant reversal if the jury demonstrated persistent confusion. Absent a showing that the jury was still confused as to whether it could convict Defendant for both first-degree deliberate intent murder or the lesser included offense of second-degree murder and felony murder, Defendant does not establish that the district court's response did not address the jury's point of confusion. Therefore, the court's instruction did not amount to reversible error.

## IV.    CONCLUSION

{17}    Because Defendant has failed to establish that the jury instructions in this case were erroneous, let alone that they resulted in reversible error, we affirm Defendant's convictions for felony murder. *See Lujan v. Reed*, 1967-NMSC-262, ¶ 25, 78 N.M. 556, 434 P.2d 378 (holding there was no error and, accordingly, no reversible error).

**{18}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**