This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: November 30, 2020**

**No. S-1-SC-37646**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**FRANCISCO MARTINEZ, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**James M. Hudson, District Judge**

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellant Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**BACON, Justice.**

**{1}** Defendant Francisco Martinez, Jr. was convicted of first-degree, willful and deliberate murder for the October 15, 1995, killing of Leobardo Loya (Victim). Defendant raises five issues on appeal: (1) whether he was provided ineffective assistance of counsel at trial, because defense counsel did not raise the issue of self-defense to the jury; (2) whether the district court committed fundamental error by not instructing the jury on self-defense; (3) whether the district court abused its discretion by allowing the

admission of evidence of a prior altercation between Defendant and Victim; (4) whether sufficient evidence supports his conviction for first-degree, willful and deliberate murder; and (5) whether his sentence for forty years' incarceration as a serious youthful offender is improper. Although Defendant's sentence was not classified as a "life" sentence, Defendant, a serious youthful offender, appeals directly to this Court pursuant to Article VI, Section 2 of the New Mexico Constitution. *See State v. Trujillo*, 2002-NMSC-005, ¶ 9, 131 N.M. 709, 42 P.3d 814 (concluding that while serious youthful offenders convicted of first-degree murder may receive less than a life sentence, they nonetheless "shall be allowed to invoke this Court's mandatory appellate jurisdiction under Article VI, Section 2 of the New Mexico Constitution").

**{2}**     We conclude that (1) Defendant does not present a prima facie case of ineffective assistance of counsel; (2) the district court did not commit fundamental error by not instructing the jury on self-defense when Defendant unequivocally waived that defense; (3) the district court did not abuse its discretion by admitting evidence of a prior altercation as proof of motive and intent; and (4) sufficient evidence supports Defendant's conviction for first-degree, willful and deliberate murder. Accordingly, we affirm Defendant's conviction.[1]

**{3}**     As to issue (5), however, the district court sentenced Defendant, as a serious youthful offender, to forty years' incarceration with ten years suspended, leaving thirty to serve. Both parties agree that this sentence is illegal because Defendant, as a serious youthful offender, cannot be subjected to a sentence greater than that of an adult offender. Thus, we remand this case to the district court so that Defendant can be properly resentenced.

## I.     BACKGROUND

**{4}**     Defendant's conviction stems from a killing that occurred at an illegal horse track in Chaves County, New Mexico on October 15, 1995. Immediately following the killing, Defendant absconded to Mexico, but law enforcement apprehended him in 2017 in El Paso, Texas.

**{5}**     According to testimony provided by Victim's brother, Lasaro Loya, he and Victim were together at the horse track the night of the murder. While at the track, Lasaro watched Defendant arrive in a truck with four other men. After they arrived, Defendant and one of the men (identified as Defendant's uncle) got out of the truck and approached Victim. As they approached Victim, the men were "looking at him in a very bad way," so Victim made a gesture with his arms out to the side as if to say, "Okay, what's going on?" After Victim made the gesture, Defendant began shooting at him and struck him with a bullet. Lasaro testified that both Defendant and his uncle had guns, but he specifically witnessed Defendant shoot Victim. When Defendant began shooting,

---

[1]Because the issues are resolved by established New Mexico precedent, we dispose of this case by non-precedential decision. *See* Rule 12-405(B) NMRA (allowing for disposition by non-precedential decision when the issues have already been decided by New Mexico appellate courts).

Lasaro hid behind a truck and tried to grab his own gun, but the gun would not shoot. Victim was not armed.

**{6}** After Victim was shot, he fell to the ground, and Defendant "ran away very fast." Defendant and his uncle got back into the truck with the other men and drove through a wire fence to exit the horse track. Lasaro took Victim to the hospital where the staff informed him that Victim was already dead.

**{7}** According to Defendant's testimony, however, Victim was the aggressor. Defendant testified that he and his family were having a cookout and decided to go to the horse track to race a horse his uncle owned. When questioned by the district court, Defendant admitted he went to the horse track without a horse. He went to the races with his two uncles, his brother-in-law, and his father. When they got to the races, Defendant and his uncle walked over to the horses. While they were walking, they spotted Victim. When they saw Victim, Defendant claims that he and his uncle walked around a few cars to try to avoid him. Defendant claims Victim walked behind one of the cars and said, "I'm talking to you, mother F'er." Once he turned around, Defendant testified that Victim went to grab a gun from his side. When Victim went for his gun, Defendant reached for his. According to Defendant's testimony, bullets were already "ringing" when he went for his gun. Defendant grabbed his gun, closed his eyes, and started shooting. After the shooting, he went back to the truck, and they took off to his family's ranch. His dad drove him to the Mexican border, gave him an address, and put him on a bus.

**{8}** Immediately after the killing, an investigation found three shell casings on the bloody ground. According to the autopsy report, three gunshot wounds to the chest killed Victim. No weapons were found on the scene, and the murder weapon was never located.

**{9}** When in Mexico, Defendant had two children with his girlfriend, Brenda Chavez. Brenda testified that she knew Defendant as Angel Martinez and she only learned his real name after he signed the birth certificate of their first child. At that point, he told her he could not return to the United States because he had killed someone. Defendant told Brenda he killed a man when the man had threatened him with a machete, and he showed Brenda a scar on his head. When Defendant told her the story, he never mentioned the man having a gun. He simply said that a man had attacked him and he had defended himself.

**{10}** At trial, the State sought to introduce evidence of a prior altercation between Defendant and Victim. The State presented this evidence under Rule 11-404(B) NMRA, as evidence of motive and intent to kill. Defendant responded by attempting to exclude the evidence by arguing that its probative value was substantially outweighed by its prejudicial effect. The district court agreed with the State and allowed the admission of testimony of the prior altercation. The State presented this evidence through testimony provided by former sheriff's deputy, Henry Crocker.

**{11}** Crocker testified that over a month prior to the murder, he interviewed Defendant about a fight between Defendant and Victim. During that interview, Defendant told Crocker that while driving, he and his brother saw Victim on the side of the road making "strange gestures." In response, they pulled over. When they pulled over, Defendant realized Victim had either a stick or pipe, so Defendant grabbed a stick, and they began fighting. After the fight, Victim was hospitalized with a broken arm, fractured skull, cuts, and bruising. Defendant had a laceration on his head, which required twenty to thirty staples to repair. The fight was determined to be mutual combat, and no charges were filed.

**{12}** During the course of the trial, the district court expressed concern that Defendant was putting on a case of self-defense. This concern intensified after Defendant offered testimony that he shot Victim in response to Victim reaching for his gun. In response, the district court asked defense counsel to confer with Defendant as to whether he intended to proceed without tendering a self-defense instruction to the jury, or if he wished to have trial on another day with the jury instructed on self-defense. After conferring with her client, defense counsel informed the district court that Defendant wished to proceed without the tendering of a self-defense instruction. To ensure Defendant waived this defense knowingly and voluntarily, the district court conducted the following colloquy with Defendant:

> District Court: Okay. Mr. Martinez, I need to ask you some questions. You understand that as a result of your testimony, I think that the issue of self-defense as a defense to the charges against you has been sufficiently raised; do you understand that?
>
> Defendant: Yes, sir.
>
> District Court: And you understand that if that issue, self-defense, were presented to the jury and they found that you acted in self-defense, that you would be acquitted?
>
> Defendant: Yes, sir.
>
> District Court: So you understand that self-defense is—can be a complete defense to the charges against you?
>
> Defendant: Yes, sir.
>
> District Court: Ms. Hightower has indicated that your strategy that she's going to follow is that she's not going to request—raise the issue of self-defense, she's not going to request that the jury be instructed on self-defense, and that she's not going to argue self-defense in any way in closing arguments; do you understand that that is your trial strategy?
>
> Defendant: Yes, sir.

District Court: And have you discussed that trial strategy with Ms. Hightower?

Defendant: We have.

District Court: And have you had the opportunity to have any questions you might have about pursuing that strategy answered to your satisfaction?

Defendant: Yes.

District Court: And have you elected to follow that trial strategy?

Defendant: Yes, sir.

District Court: And do you understand that if you follow that trial strategy, you are giving up your right to claim self-defense in any way?

Defendant: Yes, sir.

District Court: Is this your decision?

Defendant: Yes, sir.

District Court: Have you made that decision voluntarily?

Defendant: Yes, sir, I have.

District Court: Is anybody forcing you to do this against your will?

Defendant: No, sir.

The district court then presented a proposed instruction to both Defendant and the State instructing the jury not to consider self-defense in any way, which all parties agreed upon.

**{13}** Defendant was ultimately found guilty of first-degree murder, and the district court sentenced him to forty years' incarceration followed by two years of parole, with ten of those years suspended. This appeal follows pursuant to Rule 12-102(A)(1) NMRA.

## II. DISCUSSION

### A. Defendant Does Not Present a Prima Facie Case of Ineffective Assistance of Counsel

**{14}** Defendant claims he was denied effective assistance of counsel at trial, and he asks this Court to remand to the district court for an evidentiary hearing. He argues that his trial counsel's performance "fell below an objective standard of reasonableness," and this failure prejudiced him. This failure, Defendant argues, was defense counsel's decision not to pursue the defense of self-defense at trial. Defendant asserts that his counsel gave him the false choice of either (1) continuing with his current trial without the defense of self-defense, or (2) having a new trial in which self-defense was pursued. A new trial, however, would have been unnecessary if defense counsel had raised self-defense in his original trial, Defendant contends.

**{15}** The State responds by illuminating the fact that defense counsel's actions were part of her trial strategy. That strategy, the State asserts, was to pursue the argument that everyone was shooting and that it was impossible to determine who fired the fatal shots that actually killed Victim. Not only did Defendant argue that it was unclear who fired the fatal shots, the State contends that Defendant's strategy was also to demonstrate that there was no direct evidence that Defendant killed Victim with deliberate intent, thus negating a necessary element to convict Defendant of first-degree, willful and deliberate murder. Such strategy, the State argues, is seemingly reasonable without record of defense counsel's conversations with Defendant. Because the record should be developed as to these discussions, the State argues that this claim would be more appropriate for a habeas corpus proceeding.

**{16}** To ensure fairness during the course of a criminal case, "[t]he Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees not only the right to counsel but 'the right to the effective assistance of counsel.'" Patterson v. LeMaster, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032 (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). Effective assistance is necessary during all critical stages of the proceedings. Id.

**{17}** "A prima facie case of ineffective assistance is made by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced." Id. ¶ 17 (internal quotation marks and citation omitted). These two prongs are referred to as the "reasonableness prong" and the "prejudice prong." Id. In reviewing the reasonableness prong, we do not question strategic decisions of counsel. Id.

**{18}** Because the original trial record is typically undeveloped as to counsel's performance and any resulting prejudice, claims for ineffective assistance of counsel are best addressed in a post-conviction habeas corpus proceeding. State v. Crocco, 2014-NMSC-016, ¶ 13, 327 P.3d 1068. Defendant, however, has brought this claim on direct appeal, and thus, we must evaluate the facts that are part of the record. See id. ¶ 14. "The burden of establishing a prima facie case requires [the defendant] to establish

both elements of ineffective assistance, attorney error and prejudice." *Id.* "A prima facie case is made if [the defendant] produces enough evidence to allow the fact-trier to infer the fact at issue and rule in [the defendant's] favor." *Id.* (internal quotation marks and citation omitted). If a "plausible, rational strategy or tactic" can justify counsel's conduct, we will not find ineffective assistance of counsel. *Id.* ¶ 15 (quoting *State v. Paredez*, 2004-NMSC-036, ¶ 22, 136 N.M. 533, 101 P.3d 799).

**{19}** Here, counsel may have rationally come to the conclusion that injecting self-defense into Defendant's trial would be futile or even potentially harmful. "A self-defense instruction is warranted only when the evidence is 'sufficient to allow reasonable minds to differ as to all three elements of the defense.'" *State v. Guerra*, 2012-NMSC-014, ¶ 13, 278 P.3d 1031 (brackets omitted) (quoting *State v. Lopez*, 2000-NMSC-003, ¶ 23, 128 N.M. 410, 993 P.2d 727).

> A defendant is not entitled to a self-defense instruction unless it is justified by sufficient evidence on every element of self-defense. Those elements are that (1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed. The first two requirements, the appearance of immediate danger and actual fear, are subjective in that they focus on the perception of the defendant at the time of the incident. By contrast, the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant.

*Id.* (quoting *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170). Defendant likens his case to *People v. Jaffe*, 493 N.E.2d 600 (Ill. App. Ct. 1986). In *Jaffe*, the court agreed with the defendant that his counsel's failure to request a self-defense instruction amounted to ineffective assistance of counsel. *Id.* at 609. *Jaffe* involved a defendant who arrived at a residence and was met by a "wild-eyed" visitor holding a pistol in his right hand. *Id.* at 610. While pointing the pistol at the defendant, the visitor said, "Okay, fucker," and the two men fought for the gun. *Id.* The fight ended with the defendant losing consciousness for several minutes, and once he awoke, he ran for his life. *Id.* Such facts, the court reasoned, justified a self-defense instruction if requested by the defendant. *Id.* The court explained that counsel's failure to tender any instruction on self-defense was unreasonable and not justified by strategy or tactic because self-defense was the defendant's *sole* defense. *Id.* (emphasis added).

**{20}** Defendant's case is distinguishable from *Jaffe* because self-defense was not Defendant's sole defense. In *Jaffe*, evidence was presented that the "wild-eyed" victim was pointing a pistol at the defendant and fought with him. Here, Defendant testified that bullets were "ringing" and he saw the handle of Victim's gun. Defense counsel's strategy was to argue that anyone could have shot Victim because multiple people were shooting. In line with this argument, the trial tactic was to dispute that Defendant could have formed the deliberate intent to shoot and kill Victim, thus negating a necessary element of first-degree murder.

**{21}** Notably, no step-down instructions were given in this trial. If the jury accepted the argument that Defendant did not kill Victim with deliberate intent or intend another to cause the death of Victim, Defendant would have been acquitted. Defense counsel could have reasonably concluded that if she could simply put reasonable doubt in the minds of jurors as to Defendant's deliberate intent, she could have successfully obtained an acquittal for Defendant. Suggesting that Defendant intended to shoot Victim, albeit in self-defense, could have interfered with such strategy to negate the element of deliberate intent.

**{22}** Even if this strategy were misguided, an improvident strategy or tactic does not present a prima facie case of ineffective assistance of counsel. *See State v. Gonzales*, 1992-NMSC-003, ¶ 36, 113 N.M. 221, 824 P.2d 1023 (recognizing that although a defendant may reasonably question improvident trial tactics, such strategy does not necessarily amount to ineffective assistance of counsel) *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 2, 306 P.3d 426. Because defense counsel's performance was justified by strategy, Defendant failed to present a prima facie case of ineffective assistance of counsel. *See State v. Ortega*, 2014-NMSC-017, ¶ 55, 327 P.3d 1076 (holding that conduct explained by "rational strategy or tactic" defeats a defendant's claim of ineffective assistance of counsel (internal quotation marks and citation omitted)).

**{23}** We conclude that Defendant's ineffective assistance of counsel claim is better suited for a habeas corpus proceeding in which the record can be properly developed. *See State v. Astorga*, 2015-NMSC-007, ¶ 25, 343 P.3d 1245 (stating that when the record does not support a prima facie claim of ineffective assistance of counsel on direct appeal, the claim is more appropriately pursued in a habeas corpus proceeding). Specifically, discussions between defense counsel and Defendant need to be developed in order to properly review Defendant's claim.

**B.      The District Court Did Not Commit Fundamental Error by Not Instructing the Jury on Self-Defense**

**1.      Standard of review**

**{24}** If a claimed error related to jury instructions is unpreserved, we review for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. Under this standard, we determine "whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted). When reviewing for fundamental error, however, we will only reverse the verdict when "necessary to prevent a miscarriage of justice." *Id.* (internal quotation marks and citation omitted).

**2.    The district court did not commit fundamental error because any potential error was invited by Defendant and is best suited for review in a habeas corpus proceeding**

**{25}**    Defendant contends that the district court's failure to tender a self-defense instruction to the jury "constitutes fundamental error requiring reversal." Defendant cites to *Guerra*, 2012-NMSC-014, ¶ 13, to argue that a defendant is entitled to a self-defense instruction if substantial evidence would permit reasonable minds to differ as to *all* elements of the defense (emphasis added). Defendant contends there was sufficient evidence to support a self-defense instruction because the evidence presented "an appearance of immediate danger of death or great bodily harm to [Defendant] as a result of [Victim] drawing his gun," citing UJI 14-5183 NMRA and *State v. Baroz*, 2017-NMSC-030, 404 P.3d 769.

**{26}**    Under a fundamental error standard, Defendant seeks to establish that the district court's mistake in not promulgating an instruction on self-defense to the jury amounts to a "mistake in the process [that] makes [his] conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Barber*, 2004-NMSC-019, ¶ 17. Defendant stresses that although the jury was free to reject his theory of defense, the jury should nonetheless have been instructed on self-defense, as opposed to his counsel's "flawed strategy." Additionally, Defendant argues that the district court's clarifying instruction telling the jury to disregard any inference of self-defense in Defendant's testimony was "tantamount to calling [Defendant] a liar."

**{27}**    The State refutes Defendant's contentions by arguing that the clarifying instruction, agreed upon by both parties, was only offered because of defense counsel's representations that she did not seek to present a case of self-defense. According to the State, the issue of fundamental error is moot on account of the lack of self-defense instruction (and subsequent clarifying instruction) being "invited and encouraged by defense counsel." In support of this rebuttal, the State argues that when a defendant invites error, they cannot "subsequently complain about that very error." *State v. Handa*, 1995-NMCA-042, ¶ 35, 120 N.M. 38 (internal quotation marks and citation omitted).

**{28}**    Defendant has not demonstrated the commission of fundamental error by the district court. The doctrine of fundamental error does not apply when the defendant creates the error by his own actions and then invokes the doctrine when doing so contravenes the "orderly and equitable administration of justice." *State v. Osborne*, 1991-NMSC-032, ¶¶ 39-41 (internal quotation marks and citations omitted). When a defendant affirmatively encourages, or explicitly requests that the court take a certain course of action, the defendant "is in no position to claim error." *State v. Nguyen*, 2008-NMCA-073, ¶ 22, 144 N.M. 197, 185 P.3d 368.

**{29}**    In the instant case, Defendant did not simply acquiesce to a ruling by the district court—he affirmatively requested no self-defense instruction be given. Then, when engaging in a colloquy with the district court, he knowingly and voluntarily waived the defense of self-defense. As illuminated by the State, Defendant provides no authority where a district court overrode a defendant's express request not to tender a specific

defense. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). Not only did Defendant affirmatively waive this defense, he agreed to the clarifying instruction tendered by the district court. As to that instruction, Defendant does not argue that the tendering of the clarifying instruction constituted fundamental error, but instead, focuses entirely on the lack of a self-defense instruction. *See State v. Dickert*, 2012-NMCA-004, ¶ 35, 268 P.3d 515 (declining to review for fundamental error when the argument is undeveloped). Defendant's argument here rests on the presumption he received questionable advice. Thus, Defendant's remedy does not lie in the doctrine of fundamental error. As stated above, Defendant should proceed via habeas corpus proceeding, so that the record can be developed as to his discussions with his counsel. It thus follows that the district court's actions were not so erroneous that reversal is "necessary to prevent a miscarriage of justice." *Sandoval*, 2011-NMSC-022, ¶ 13 (internal quotation marks and citation omitted).

## C.     The District Court Did Not Abuse Its Discretion in Admitting Evidence of a Prior Altercation Between Defendant and Victim

### 1.     Standard of review

**{30}**     "We review [a district] court's decision to admit evidence under Rule 11-404(B) for abuse of discretion." *State v. Otto*, 2007-NMSC-012, ¶ 9, 141 N.M. 443, 157 P.3d 8. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

### 2.     Evidence of Defendant's prior altercation with Victim was properly admitted under Rule 11-404(B)(2) as evidence of motive and intent

**{31}**     Defendant argues that evidence of his prior altercation with Victim was presented solely for the purpose of demonstrating that Defendant had a propensity for violence and, accordingly, should have been excluded under Rule 11-404(B)(2). Defendant's argument is twofold. First, he claims that the evidence is not probative of motive because it was an isolated incident where Defendant suffered minor injuries with no connection to the subsequent slaying. Next, he states that any slight probative value of the altercation is significantly outweighed by the prejudicial nature of such evidence.

**{32}**     The State responds by refuting Defendant's claim that his injuries resulting from the altercation were minor. The State cites to *State v. Flores*, 2010-NMSC-002, ¶ 32, 147 N.M. 542, 226 P.3d 641, for the proposition that the evidence presented of Defendant's and Victim's relationship "directly addresses the motivational theories presented at trial." We agree.

**{33}**     Evidence of the prior altercation between Defendant and Victim was probative of both motive and intent and was not significantly outweighed by its prejudicial effect.

"Under Rule 11-404(B), evidence of a defendant's prior acts is admissible to show proof of motive." *State v. Rojo*, 1999-NMSC-001, ¶ 47, 126 N.M. 438, 971 P.2d 829. The proponent of this evidence, however, "must identify the particular consequential fact upon which the proffered evidence bears and must explain how the proffered evidence makes the consequential fact 'more probable or less probable,' Rule 11-401 NMRA, *in a way that does not depend upon an inference of a propensity for criminal behavior*." *State v. Kerby*, 2005-NMCA-106, ¶ 25, 138 N.M. 232, 118 P.3d 740, *aff'd*, 2007-NMSC-014, 141 N.M. 413, 156 P.3d 704.

**{34}** The prior altercation was probative of Defendant's motive and intent. At trial, Defendant testified that when he and Victim fought, he ended up with twenty to thirty staples in his head, lost consciousness, and was shaking. Although he testified that he felt he won the fight, he admitted suffering from injury. When the State argued that this evidence was probative of intent and motive, the district court agreed saying, "it's not propensity evidence, but it goes to motive and intent, and it's relevant to that." The district court reasonably concluded that evidence of the prior altercation was indicative of Defendant's motive to kill Victim, because Defendant may have sought revenge against Victim.

**{35}** New Mexico has consistently held that evidence of animosity between parties or prior altercations is relevant when motive and intent are at issue. *See State v. Niewiadowski*, 1995-NMCA-083, ¶ 11, 120 N.M. 361, 901 P.2d 779 (stating that Rule 11-404(B) evidence is permitted to demonstrate intent when intent is in dispute); *see also State v. Mireles*, 1995-NMCA-026, ¶¶ 4, 6-7, 119 N.M. 595, 893 P.2d 491 (concluding that the district court did not abuse its discretion by admitting evidence of prior tension between the victim and the defendant because such evidence was probative of motive and intent). Thus, although Defendant claims the altercation and the murder were separate, isolated incidents, the district court did not abuse its discretion in finding that the evidence was admissible under Rule 11-404(B).

**{36}** Not only is this evidence probative of motive and intent, but the probative value is not outweighed by its prejudicial effect. "In the case of evidence of other uncharged bad acts, unfair prejudice refers to the risk that the jury, notwithstanding limiting instructions, *see* Rule 11-105 NMRA, nevertheless will draw unfavorable inferences about the defendant's propensity for criminal conduct from evidence of non-charged bad acts . . . ." *Kerby*, 2005-NMCA-106, ¶ 25. Indeed, "[t]he fact that competent evidence may tend to prejudice a defendant is not grounds in and of itself for exclusion of that evidence." *State v. Garcia*, 1983-NMSC-008, ¶ 20, 99 N.M. 771, 664 P.2d 969. In weighing whether the probative value of the evidence is outweighed by the prejudice against the defendant, a district court must be perceptive to the inherent prejudicial nature of prior wrong acts. *Id.*

**{37}** The district court determined that the probative value of such evidence was not outweighed by its prejudicial effect because it was not admitted as propensity evidence exclusively to demonstrate Defendant's bad character. This conclusion is not "clearly untenable or not justified by reason," and therefore, the district court did not abuse its discretion in its admission of the evidence. *See Rojo*, 1999-NMSC-001, ¶¶ 41, 46

(internal quotation marks and citation omitted) (concluding that the district court did not abuse its discretion in admitting evidence of the defendant's prior violent acts toward the victim).

## D. Sufficient Evidence Was Presented at Trial to Support Defendant's Conviction for First-Degree, Willful and Deliberate Murder

### 1. Standard of review

**{38}** When a defendant challenges the sufficiency of the evidence used for conviction, "we must determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Romero*, 2019-NMSC-007, ¶ 51, 435 P.3d 1231 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Torres,* 2018-NMSC-013, ¶ 42, 413 P.3d 467 (internal quotation marks and citation omitted). "In determining the sufficiency of the evidence, we review the evidence in the light most favorable to the State, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *State v. Thomas*, 2016-NMSC-024, ¶ 37, 376 P.3d 184. In this review, "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted).

### 2. When viewed in the light most favorable to the verdict, sufficient evidence was presented to support Defendant's conviction

**{39}** Defendant argues that there is "little to no evidence" that he, or anyone else, committed first-degree murder. In support of his argument, Defendant concedes he fired shots at Victim but denies that the State presented evidence sufficient to prove that his bullets were the ones that killed Victim. He relies on three aspects of his testimony to bolster this claim. First, Defendant argues that his gun could not be the gun responsible for Victim's death because the bullets were presumed to be from a .380 caliber weapon, and Defendant testified that he always carried a .45 caliber weapon. Second, Defendant argues that he could not have gone to the track with the deliberate intent of murdering Victim because he testified that he was unaware that Victim would be present at the horse track that day. Finally, Defendant argues that although Brenda Chavez testified that he could not return to the United States because he killed someone, Defendant claims that his statement was that he *thought* he killed someone, and he specifically denies claiming definitively that he was the killer. Relying on these arguments, Defendant states that his conviction was premised entirely on "surmise and conjecture," and thus, should be reversed.

**{40}** The State rebuts Defendant's argument by arguing that the evidence presented allowed the jury to find, beyond a reasonable doubt, that Defendant not only committed the murder, but also acted with deliberate intent. The State highlights Defendant's previous altercation with Victim as motive for Defendant to murder Victim. Specifically, the State emphasizes that Defendant "went to a racetrack, located [Victim], walked up

to him and, without so much as an exchange of words, began firing bullets at him." The State asserts that the jury could have concluded from this evidence that Defendant went to the horse track with the plan to kill Victim.

**{41}** The State argues that not only is there sufficient evidence to prove Defendant deliberately killed Victim, but there is also evidence that he and his uncle acted in concert. Such evidence, the State claims, allowed the jury to find either that Defendant committed the murder with deliberate intent or intended for the murder to be committed.

**{42}** We conclude that sufficient evidence supports Defendant's first-degree murder conviction. To convict Defendant of first-degree, willful and deliberate murder, the jury was required to find that "1. [Defendant] killed [Victim]; 2. The killing was with the deliberate intention to take away the life of [Victim]; 3. This happened in New Mexico on or about the 15th of October, 1995." The jury was also instructed on accomplice liability, which allowed them to convict Defendant if they found that "1. [Defendant] intended that the crime be committed; 2. The crime was committed; 3. [Defendant] helped, encouraged or caused the crime to be committed."

**{43}** As to whether Defendant killed Victim, two statements at trial supported this finding by the jury. First, Defendant admitted he shot his gun in the vicinity of Victim. Second, Lasaro testified that he watched Defendant point his gun and shoot Victim. This testimony allowed the jury to reasonably determine that Defendant was the one who killed Victim.

**{44}** In order for the jury to find Defendant acted with deliberate intent, they had to consider that "deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action." UJI 14-201 NMRA. In this case, there was ample evidence to suggest that Defendant committed the murder with deliberate intent. Six facts elicited at trial support this conclusion. First, Defendant and Victim had a prior altercation ending with Defendant receiving twenty to thirty staples in his head. *See State v. Smith*, 2016-NMSC-007, ¶ 20, 367 P.3d 420 (recognizing that a jury can find deliberate intent when evidence is offered of previous violence or confrontation). Second, according to Lasaro's testimony, Defendant arrived at the horse track, immediately walked up to Victim, pulled out his gun, and shot him three times. Third, Defendant immediately fled and absconded to Mexico. *See id.* ¶ 20 (noting that substantial evidence of deliberation may exist when a defendant flees the scene). Fourth, although Defendant claims he only began shooting because Victim went for his gun and others were already shooting, there were only three bullet casings found at the crime scene and three bullets were found in Victim upon autopsy, suggesting Defendant fabricated his reasons for shooting. *See Flores*, 2010-NMSC-002, ¶ 23 (stating that an attempt to deceive may demonstrate deliberate intent). Fifth, although Defendant claimed he went to the horse track to race his uncle's horse, he admitted he went to the horse track without a horse. *See id.* Finally, no weapon was found on Victim.

**{45}** Although Defendant provided an alternative account of the events on October 15, 1995, the jury was free to reject his version of the facts. *See Rojo*, 1999-NMSC-001, ¶

19 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts."); *see also State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076 (holding that, on review, we will not second-guess the jury by reweighing the evidence). The parties presented the jury with evidence sufficient for them to reasonably conclude that Defendant killed Victim with deliberate intent, and we affirm Defendant's conviction.

## E.     Defendant Should Be Resentenced in Accordance with NMSA 1978, Section 31-18-15.3(D)(1993)

**{46}**    At sentencing, the district court recognized that Defendant, as a seventeen-year-old at the time of the crime, would be sentenced as a serious youthful offender. The district court acknowledged that there was justification for mitigation, and the judge determined that he would not sentence Defendant to the mandatory adult sentence of life imprisonment with the possibility of parole after thirty years. He then went on to announce, "I sentence you to 40 years incarceration at the department of corrections followed by two years parole. You will serve 30 years." He clarified that "[i]t is a sentence of 40 years incarceration at the department of corrections followed by two years of parole. The defendant will serve 30 years, the remaining ten will be suspended to be served on five years probation. And then he's limited to a maximum of four days of earned meritorious deductions per month and 704 days credit for pretrial confinement."

**{47}**    Defendant argues that the district court imposed an illegal sentence by sentencing him as a serious youthful offender to forty years. In response, the State concedes that Defendant's sentence is unauthorized by statute and thus, this Court should remand the case to the district court for appropriate resentencing.

**{48}**    This issue is one of statutory construction, which we review de novo. *State v. Linares*, 2017-NMSC-014, ¶ 41, 393 P.3d 691.

**{49}**    "A [district] court's power to sentence is derived exclusively from statute." *State v. Martinez*, 1998-NMSC-023, ¶ 12, 126 N.M. 39, 966 P.2d 747. "This limitation on judicial authority reflects the separation of powers notion that it is solely within the province of the Legislature to establish penalties for criminal behavior." *Id.* (internal quotation marks and citation omitted).

**{50}**    Defendant was seventeen years old at the time the crime was committed in 1995, which means he was classified as a "serious youthful offender." Under the law in place in 1995, a "serious youthful offender" is "an individual sixteen or seventeen years of age who is charged with and indicted or bound over for trial for first degree murder." NMSA 1978, § 32A-2-3(H) (1995). As a "serious youthful offender," Defendant "may be sentenced to less than the basic or mandatory sentence prescribed by the Criminal Sentencing Act." NMSA 1978, § 31-18-13(A) (1993). "When an alleged serious youthful offender is found guilty of first degree murder, the court shall sentence the offender pursuant to the provisions of the Criminal Sentencing Act." NMSA 1978, § 31-18-15.3(D) (1993). "The court may sentence the offender to less than, *but not exceeding*, the mandatory term for an adult." *Id.* (emphasis added). An adult convicted of first-

degree murder "shall be punished by life imprisonment or death." NMSA 1978, § 31-18-14 (1993). An offender who is a minor at the time he committed the capital felony for which he was convicted may be sentenced to life imprisonment, but not death. *Id.* We have interpreted life imprisonment "to mean thirty years of imprisonment before the possibility of parole or reduction of sentence through good time credits." *Trujillo*, 2002-NMSC-005, ¶ 8.

{51}    Here, the district court chose not to sentence Defendant to life imprisonment without the possibility of parole. This left the option of life imprisonment with the possibility of parole after thirty years or a sentence that did not exceed life imprisonment with the possibility of parole. The district court, however, chose to sentence Defendant to forty years' incarceration followed by two years of parole. Although the district court suspended ten years' incarceration, leaving Defendant with thirty years to serve, his actual sentence exceeds that of the mandatory adult sentence. This sentence falls outside the permissible limits of Section 31-18.15.3(D), and therefore, Defendant should be resentenced accordingly.

## III.    CONCLUSION

{52}    For the foregoing reasons, we affirm Defendant's conviction but remand this case to the district court for resentencing in compliance with Section 31-18-15.3(D).

{53}    **IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**DAVID K. THOMSON, Justice**