This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40893**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**MICHAEL PALOMINO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Lee A. Kirksey, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**    A jury convicted Defendant Michael Palomino of aggravated battery with a deadly weapon, contrary to NMSA 1978, Section 30-3-5(C) (1969). On appeal, Defendant argues: (1) the district court committed fundamental error by failing to instruct the jury that a defendant acting in self-defense has no duty to retreat; and (2) prosecutorial misconduct deprived him of a fair trial. We affirm for the following reasons.

**BACKGROUND**

**{2}** The State charged Defendant with aggravated battery after Defendant had a violent altercation with a family of three men at a McDonald's restaurant. Defendant had been yelling at employees when the three men confronted him and asked him to calm down and leave the McDonald's. Tensions escalated, and Defendant reached into his bag insinuating that he had a weapon, so one of the men punched him in the face. Defendant then drew a knife and sliced the arm of the man who had punched him. Defendant claimed self-defense at trial.

**{3}** Pertinent to Defendant's claims on appeal, the prosecutor told the jury a personal story during voir dire involving an instance when her father asked a woman to leave a restaurant after she caused a disturbance. The prosecutor also made three separate comments during closing argument suggesting that Defendant could have left the scene without slashing the man who had punched him. This appeal centers around the prosecutor's remarks in voir dire and closing argument. We will discuss those comments at length in the analysis below.

**DISCUSSION**

**I.      Omission of the No-Retreat Instruction Was Not Fundamental Error**

**{4}** Defendant argues the district court should have given a no-retreat instruction with the self-defense instructions because during voir dire and closing the State implied that Defendant had a duty to retreat. *See* UJI 14-5190 NMRA (Self-defense; assailed person need not retreat.). Defendant did not preserve this argument by requesting a no-retreat instruction—we therefore review this issue for fundamental error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

**{5}** "Where there is any evidence to establish a self-defense theory, it is the duty of the court to fully and clearly instruct the jury on all relevant aspects of self-defense." *State v. Anderson*, 2016-NMCA-007, ¶ 10, 364 P.3d 306. When applying fundamental error analysis to allegedly deficient jury instructions, "we must determine whether a reasonable juror would have been confused or misdirected not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Samora*, 2016-NMSC-031, ¶ 27, 387 P.3d 230 (internal quotation marks and citation omitted). "If we conclude that a reasonable juror would have been confused or misdirected, then we review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 20, 150 N.M. 224, 258 P.3d 1016 (alteration, internal quotation marks, and citation omitted).

**{6}** Defendant claims the district court was required to give the no-duty to retreat instruction because the State put the duty to retreat at issue during voir dire and closing

argument. During voir dire, the prosecutor told a personal story that resembled the facts of this case. The prosecutor's story involved an instance when her father confronted a woman at a restaurant who was causing a scene. At the end of the story, the woman left the restaurant after being told to do so by the prosecutor's father. Defendant claims that the State put the duty to retreat at issue by telling this story, and otherwise implied that Defendant had a duty to retreat during closing arguments, when the prosecutor suggested that Defendant could have left the scene without assaulting the victim. According to Defendant, the prosecutor misstated the law by suggesting that Defendant had a duty to retreat and that could have confused or misdirected the jury because a defendant may stand their ground in New Mexico. *See* UJI 14-5190.

{7}     Defendant argues that the omission of the no-retreat instruction altered what was reasonable for the Defendant to have done in this case. Defendant compares this case to *Anderson*, where two men got into an argument at a house party, and it escalated into a deadly shooting. 2016-NMCA-007, ¶ 3. At trial, the district court in *Anderson* determined that both a self-defense and no-retreat instruction were warranted; however, it mistakenly omitted the no-retreat instruction when the instructions were given to the jury. *Id.* ¶ 6. This Court held that the jury was not fully and adequately informed on the law relevant to the case because the defendant's self-defense theory rested on the argument that he could stand his ground. *Id.* ¶ 14. Further, this Court held, and Defendant emphasizes, the omission of the no-retreat instruction altered what was reasonable in the context of self-defense. *See id.* Defendant here argues the prosecutor's story and closing argument statements could have confused the jury into believing that Defendant acted unreasonably by refusing to leave, thus causing Defendant's theory of self-defense to fail.

{8}     "[W]here the evidentiary basis for the no-retreat instruction has been laid, the instruction alters what 'reasonable' means under the third prong of the self-defense instruction." *State v. Candelaria*, 2019-NMSC-004, ¶ 35, 434 P.3d 297 (alteration, internal quotation marks, and citation omitted); *see also* UJI 14-5181 NMRA (element 5) (stating that the self-defense instruction requiring jurors to determine whether "[t]he apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did"). In *Anderson*, this Court recognized that

> the term "reasonable" . . . carries a different meaning when read in conjunction with the no-retreat instruction than it does alone. Read alone, a person exercising the "degree of attention, knowledge, intelligence, and judgment that society requires of its members" is acting reasonably. When read together with the no-retreat instruction, however, a person who, when threatened with an attack, does not retreat and stands his ground when exercising his right of self-defense is acting reasonably. Thus, we conclude that once the district court determined the propriety of giving it, the failure to provide the no-retreat instruction that informed a determination critical to the case was akin to a missing elements instruction.

2016-NMCA-007, ¶ 15 (citations omitted). Under *Anderson*, the district court would have been required to issue the no-retreat instruction if the parties had called into question whether Defendant acted reasonably by standing his ground and defending himself, and had laid a corresponding evidentiary foundation. *See id.* ¶ 14.

**{9}** Here, Defendant's argument below rested on the theory that he defended himself in the McDonald's restaurant after he entered a verbal altercation with three men, and one of them punched him as he reached into his bag and before he drew a knife. The defense did not discuss whether it would have been reasonable for Defendant to leave the restaurant before the fight, but during closing, the State emphasized, in three different instances, that Defendant could have left without harming the victim. First, the prosecutor said, "For all of you that have been in the McDonald's, there are two different entrances and exits, you can go through either, but [Defendant] didn't," which drew an objection from Defense counsel.[1] After Defendant objected, the prosecutor stated, "If [Defendant] wanted to leave so bad, why didn't he just leave when [one of the three men involved in the altercation with Defendant] said, 'Hey, shut up, leave'." The third instance occurred towards the end of closing when the prosecutor stated, "[Defendant], instead of just, 'okay, he told me to leave, I'm going to leave' he instead advanced on the [the three men involved in the altercation]." In addition, the prosecutor referenced Defendant being held at the McDonald's until police arrived, when the prosecutor stated, "The question is not about whether they should have allowed [Defendant] to leave after he's already slashed someone with a knife."

**{10}** During voir dire, the prosecutor also told a story about her and her parents going out to eat at a restaurant where a woman started causing a scene. The prosecutor explained that during the incident, she wanted to crawl under the table, her mother just sat and watched, and her father confronted the disruptive customer. The story ends with her father telling the disruptive customer to leave, and the customer does leave, but at no point does the prosecutor imply that it was the right thing to do, or that the customer had any legal duty to do so. The prosecutor ended the story with: "to [the disruptive customer's] credit, if my father talked to me in that voice, I would've crawled under the table and she left." The prosecutor then went on to ask if any of the potential jurors saw something wrong with how she, her mother, or her father handled the situation. All of her follow-up questions, and the jurors' responses, had to do with how to properly react to a disruptive customer, not whether the disruptive customer should have left. The prosecutor made no argument that anyone had any legal duty to leave, or that anyone was right in how they handled the situation.

**{11}** We conclude that the prosecutor's remarks in closing may have confused or misdirected the jury because they insinuated that Defendant acted unreasonably by failing to retreat. It was for the jury to decide whether the confrontation and the self-

---

[1]Defendant objected to this statement, although the record is inaudible and does not clearly state the grounds for the objection. Defendant also claims that the district court told the State to "move on" but did not instruct the jury to disregard the statement, which the State does not dispute. Due to the poor quality of the audio, we could not confirm whether the district court told the parties to "move on," or how it otherwise reacted to Defendant's objection.

defense began with the punching or moments before with the verbal altercation and as a corollary, whether Defendant's conduct was reasonable throughout. As such, we assume but do not decide the omission of the no-retreat instruction constituted error because Defendant had no duty to retreat in the face of an attack. *Cf. State v. Mora*, A-1-CA-35352, mem. op. ¶ 15 (N.M. Ct. App. Jul. 26, 2019) (nonprecedential) ("Absent a no-retreat instruction, the prosecutor's remarks posed a significant risk of jury confusion and misdirection. Based on the prosecutor's remarks, a reasonable juror could have rejected [the d]efendant's self-defense theory based on a misunderstanding of New Mexico law.").

**{12}** We now turn to the second part of our analysis, reviewing the entire record and "placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." *Sandoval*, 2011-NMSC-022, ¶ 20 (alteration, internal quotation marks, and citation omitted). "An error is fundamental when it goes to the foundation or basis of a defendant's rights." *Anderson*, 2016-NMCA-007, ¶ 8 (internal quotation marks and citation omitted). While the prosecutor's comments may have confused the jury about whether it was reasonable for Defendant to stand his ground, she did not directly argue that Defendant had a duty to retreat, which would have been a misstatement of the law. Further, Defendant never laid a specific evidentiary foundation suggesting that he had no duty to retreat, and therefore stood his ground in the face of an attack. *Cf. Anderson*, 2016-NMCA-007, ¶ 14 (requiring the no-retreat instruction where the defendant laid the corresponding evidentiary foundation and based his defense on the fact that he had no duty to retreat). Rather, Defendant focused on the fact that he acted in self-defense "against these series of punches" and cut the victim "trying to free himself in self-defense," without mentioning why it was reasonable for him not to leave the restaurant before the encounter became physical.

**{13}** As such, the missing instruction did not cause juror confusion such "that the jury could have convicted [D]efendant based upon a deficient understanding of the law regarding self-defense." *See id.* ¶ 13 (internal quotation marks and citation omitted). We therefore conclude that no fundamental error occurred.

## II. No Prosecutorial Misconduct Occurred

**{14}** Defendant indicates two alleged instances of prosecutorial misconduct at trial, and argues that either would indicate reversal, or that both in tandem amounted to cumulative error. Defendant argues that the aforementioned segment of voir dire amounted to prosecutorial misconduct, when the prosecutor told a personal story in which her father confronted a woman at a restaurant who was causing a scene. Defendant also points to a comment the prosecutor made during closing, when she said, "For all of you that have been in the McDonald's, there are two different entrances and exits, you can go through either, but [Defendant] didn't." On appeal, Defendant argues that the prosecutor misstated the law when she suggested that Defendant could have left but failed to do so. Defendant further argues that the prosecutor improperly asked jurors to use their personal knowledge of the scene.

**{15}** We review the first instance of alleged misconduct for fundamental error because Defendant did not object. When reviewing for fundamental error, "we begin with the presumption that the verdict was justified, and then ask whether the error was fundamental." *State v. Sosa*, 2009-NMSC-056, ¶ 37, 147 N.M. 351, 223 P.3d 348. "To find fundamental error, we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Id.* ¶ 35 (internal quotation marks and citations omitted). "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted).

**{16}** No such error occurred based on the prosecutor's story during voir dire. The story properly gauged potential jurors' feelings about how one might react to a disruptive customer, rather than implying that a disruptive customer must leave a restaurant when asked to do so. Further, the prosecutor did not misstate the law by telling this story—she did not state or imply that Defendant had a duty to retreat, as we discussed in the previous section. We determine the story did not amount to prosecutorial misconduct.

**{17}** As to the second alleged instance of misconduct, we first address Defendant's argument that the prosecutor improperly asked the jury to put themselves in the victim's shoes by stating, "For all of you that have been in the McDonald's, there are two different entrances and exits, you can go through either, but [Defendant] didn't." We conclude that this statement did not require the jury to imagine themselves in the place of the victim, but rather simply commented on the layout of the restaurant, and did not deprive Defendant of a fair trial. *Cf. State v. Paiz*, 2006-NMCA-144, ¶ 58, 140 N.M. 815, 149 P.3d 579 ("Although the prosecution is not advised to invite jurors to empathize in this manner, we cannot agree that the comment deprived [the d]efendant of a fair trial."). We agree with Defendant that the State should not have commented on the layout of the restaurant if it was not otherwise alluded to by the evidence in the record, but doing so did not rise to fundamental error in this instance. *Cf. Allen*, 2000-NMSC-002, ¶¶ 103-04 (stating that while it was improper to comment on matters outside of the record, it did not deprive the defendant of a fair trial).

**{18}** Having thus concluded the jury was not asked to put themselves in the place of the victim or to consider unduly prejudicial evidence outside of the record, we apply a three factor test to decide whether the prosecutor's closing comment about the exits in the McDonald's rises to the level of either an abuse of discretion or fundamental error. *See Sosa*, 2009-NMSC-056, ¶ 26 (stating that we apply the same test to determine whether prosecutorial misconduct occurred during closing statements, whether the issue is preserved or not). Those three factors are: "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Id.* In applying these factors, we evaluate the statements "objectively in the context of the prosecutor's broader argument and the trial as a whole." *Id.*

**{19}** The first factor is not implicated here. The State's remarks during closing did not violate any of Defendant's constitutional rights, such as his right to remain silent. *Cf. State v. Sena*, 2020-NMSC-011, ¶¶ 17-18, 470 P.3d 227 (holding that a comment inviting the jury to draw an adverse conclusion from a defendant's failure to testify violated the defendant's Fifth Amendment right to silence, and compromised the defendant's right to a fair trial).

**{20}** "Absent a constitutional violation, we look at the length and repetition of the comment to determine whether it was so pervasive as to clearly distort the body of evidence before the jury." *Sosa*, 2009-NMSC-056, ¶ 38. As previously mentioned, the State made three separate comments in closing about Defendant's failure to leave the restaurant prior to slashing the victim. These three mentions, over the course of an eight-minute closing, amounted to more than isolated and brief statements. While this factor weighs against the State, no one factor is dispositive, and we turn to the third and final factor.

**{21}** The third factor is whether the error was invited by the defense. The State contends that the prosecutor argued that Defendant had an option to leave at the inception of the incident in response to Defendant's argument that he wanted to leave when he was being held by the three men until police arrived. Upon review of the closing arguments by Defendant, we found one mention of Defendant leaving when the three men "backed [Defendant] into the corner of McDonald's, chairs were being thrown back and forth, and they were not going to let [Defendant] go . . . they were not going to let him leave after they inserted themselves in a situation that was never theirs to handle."

**{22}** There is a distinction to be drawn here between the two periods that are being referred to by the State and Defendant. The State references Defendant leaving before the altercation became violent, and Defendant references leaving after the altercation occurred, when the three men had backed him into the corner to wait until police arrived. Defendant only referenced leaving *after* the encounter became violent. We conclude that Defendant invited or opened the door to the State's argument about whether the three men should have allowed Defendant to leave; however, Defendant did not open the door to whether he should have left *before* the altercation turned violent. This factor therefore weighs neutrally or slightly against the State.

**{23}** On balance, we conclude that Defendant did not meet his burden to prove the prosecutor's mention of the exits in the McDonald's rose to fundamental error. "To find fundamental error, we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Sosa*, 2009-NMSC-056, ¶ 35 (internal quotation marks and citation omitted). The comment related to Defendant's ability to leave before the encounter escalated to physical violence and the evidence clearly demonstrated that Defendant had slashed the victim with the knife in his bag, and the jury was free to conclude that Defendant had not acted in self-defense. *See State v. Torres*, 2012-NMSC-016, ¶ 10, 279 P.3d 740 (emphasizing that the three factors for

analyzing prosecutorial misconduct are "meant to be 'useful guides' and that context is paramount" (citation omitted)); *Candelaria*, 2019-NMSC-004, ¶ 39. As noted in the previous section, the jury was sufficiently instructed to determine whether Defendant had acted reasonably in this instance.

**{24}** Having concluded that the district court did not commit fundamental error by allowing for the prosecutor's statements in voir dire and closing, we hold that no cumulative error occurred. *See State v. Romero*, 2019-NMSC-007, ¶ 45, 435 P.3d 1231 ("The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." (internal quotation marks and citation omitted)). We therefore decline to reverse the conviction here. *Cf. Sosa*, 2009-NMSC-056, ¶ 41 ("[O]ur obligation is to assume there was no error until [the d]efendant satisfies [their] burden of persuasion by showing otherwise. In light of the overwhelming evidence of guilt, the context of the statement, and [the d]efendant's failure to alert the judge to any error during trial, we decline to take the extraordinary action of upsetting the jury's verdict.").

**CONCLUSION**

**{25}** For the foregoing reasons, we affirm.

**{26} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**KATHERINE A. WRAY, Judge**